Argued February 3, remanded March 18, petition for
rehearing denied April 28, 1964

# STATE OF OREGON *v.* SCOTT

390 P. 2d 328

Argued and submitted February 3, 1964.

*Thomas A. Huffman,* Hillsboro, argued the cause for appellant. On the briefs were Huffman and Zenger, Hillsboro.

*Richard Smurthwaite,* Deputy District Attorney, Hillsboro, argued the cause for respondent. With him on the brief was Francis W. Linklater, District Attorney, Hillsboro.

Before McAllister, Chief Justice, and Rossman, Perry, O'Connell, Denecke and Lusk, Justices.

DENECKE, J.

The defendant was tried and convicted under the following indictment:

"HOLLIS D. SCOTT, also known as TED SCOTT is accused by the Grand Jury of Washington County by this indictment of the crime of ob-

taining money by false pretenses committed as follows.

"That the said defendant Hollis D. Scott, also known as Ted Scott, on the 17th day of September A.D. 1962, in the said County of Washington, State of Oregon, then and there being did then and there unlawfully and feloniously, with intent to injure and defraud, falsely pretend to Myrtle Elliott that he, the said Hollis D. Scott, also known as Ted Scott, had on deposit with the Hillsboro Commercial Branch of the United States National Bank of Portland, at Hillsboro, Oregon, subject to check, the sum of $36.93 and that a certain bank check drawn on said bank for said sum of money, dated September 17, 1962, signed by him and then and there delivered by him to the said Myrtle Elliott was a good and valid check for said sum of money, by means of which false pretenses and fraudulent check the said defendant did then and there unlawfully and feloniously obtain from the said Myrtle Elliott the sum of $37.13, money of the United States of America, the property of the said Myrtle Elliott, who was then and there induced by the said false pretenses to accept said bank check and to pay therefor the sum of $37.13, whereas, in truth and fact, the said defendant did not then and there have on deposit in the said bank subject to check the said sum of money, but did have in said bank an account without any money subject to check, and the said bank check was neither good nor valid, but was void and worthless, all of which he, the said defendant, then and there well knew, said act of defendant being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

The indictment charges that the defendant issued a check upon an account having insufficient funds to cover such check and that the defendant knew of such insufficiency at the time the check was issued. All

concerned have treated the proceeding as a prosecution for obtaining money by false pretenses. ORS 165.205.[1] However, the decision in *Broome v. Gladden,* 231 Or 502, 373 P2d 611 (1962), specifically holds that when a check is dishonored for insufficient funds in an existing account, rather than for the reason that the drawer has no account, the offense is a violation of ORS 165.225,[2] the worthless check statute, rather than ORS 165.205, the obtaining money by false pretenses statute.[3]

> *Broome v. Gladden,* supra (231 Or at 505), decided:
>
> "* * * We construe ORS 165.205 and ORS 165.225 as defining mutually exclusive crimes. ORS 165.225 applies only where the accused has, prior to presenting the check, established an account in the bank upon which the check is drawn. Where no debtor-creditor relationship exists between the ac-

---

[1] "(1) Any person who, by any false pretenses or any privity or false token, and with intent to defraud, obtains or attempts to obtain from any other person, any money or property, or who obtains or attempts to obtain with like intent the signature of any person to any writing, the false making of which would be punishable as forgery, shall be punished upon conviction by imprisonment in the penitentiary for not more than five years, or by imprisonment in the county jail for not more than one year, or by a fine of not more than $500, or by both such fine and imprisonment."

[2] "(1) Any person who, for himself or as agent or representative of another, or as an officer, agent or employe of a corporation, and on behalf thereof, wilfully and with intent to defraud, makes, draws, utters or delivers any check, draft or order upon any bank or other depository for the payment of money, knowing at the time of the making, drawing, uttering or delivering that the maker or drawer, or his principal or the corporation, has not sufficient funds in or credit with said bank or other depository for the payment of the check, draft or order in full upon its presentation, although no express representation is made that there are sufficient funds in or credit with such bank or other depository for its payment in full upon presentation, shall be punished upon conviction as follows: * * *."

[3] Gumm v. Heider, 220 Or 5, 17, 348 P2d 455, 461 (1960), used the phrase "Worthless Check Statute."

cused and the drawee bank the drawer may be prosecuted under ORS 165.205 but not under ORS 165.225. *Cf., State v. Wittman,* 85 Ariz 292, 337 P2d 280 (1959)."

The distinction is important here. The check was for $37.13. The defendant was sentenced to three years in the penitentiary. Such a sentence is authorized by the false pretenses statute, as such statute provides for a maximum sentence of five years, regardless of the amount of the check. However, a three-year sentence is not authorized by the worthless check statute for passing a $37.13 check. The latter statute provides that one convicted thereunder "* * * shall be punished * * * [i]f the amount of such check does not exceed $75, by imprisonment in the county jail for not more than one year or by a fine of not to exceed $1,000, or both. * * *"

■ This improper sentence is not assigned as error in appellant's brief. However, under Rule 46 of this court's rules of procedure, we can and do take notice of it as an error apparent on the face of the record. The case must be remanded for resentencing on this ground alone.

■ Defendant contends it was error for the trial court to find the defendant guilty because "the evidence of * * * intent and knowledge was insufficient." The case was tried before the court alone. Under the worthless check statute, as well as the false pretenses statute, the defendant must be found to have had an intent to defraud. Therefore, the inquiry as to whether there was evidence of intent is still relevant.

It is conceded that defendant's account was overdrawn at the time he issued the check upon which the present charge is based, and the bank refused to honor

the check for that reason. The worthless check statute provides: "As against the person making * * * a check, * * * payment of which is refused by the drawee because the maker * * * has insufficient funds in, or credit with, such drawee, such refusal by the drawee is prima facie evidence of the intent of the person making * * * such check * * * to defraud, and of his knowledge of the insufficiency of funds in, or credit with, such bank or other depository." An instruction embodying the above-quoted statute was approved in *State v. Robinson,* 120 Or 508, 516, 252 P 951 (1927).

■ The defendant did not testify, and there was no evidence which remotely could be considered to rebut, as a matter of law, the prima facie case of intent and knowledge established by proof that the account had insufficient funds. This contention of defendant that the evidence was insufficient is not well founded.

■ The receipt into evidence, over defendant's objection, of an exhibit prepared by the bank and recording the history of the last month of the account is asserted to be error. The exhibit was offered after it had been identified by the bank's witness who prepared it. Upon defendant's objection that it was hearsay, the trial court reserved ruling on the admission of the exhibit. On cross-examination, the bank's witness was asked about various entries on the exhibit, such as the balance at the beginning of the month. At the close of the state's case the trial court admitted the exhibit stating, "I am going to allow the introduction of this sheet, Mr. Huffman [defendant's attorney]. You asked a question on it."

The trial court was correct. An objection to an exhibit is waived if the party objecting to the exhibit

thereafter uses the exhibit for his own purposes. *Sevener v. Northwest Tractor & Equipment Corp.*, 41 Wash2d 1, 247 P2d 237, 245 (1952).

■ The defendant also contended that the trial court was in error in regard to certain rulings regarding the presentence report. As the defendant must be resentenced, the issues raised in this assignment are not moot.

Defendant's objections to the presentence report are that neither party requested such a report, that the court's use of the report was, therefore, improper, and that the report contained material which is inadmissible at a statutory aggravation and mitigation hearing.

Oregon law has two procedures governing the sentencing court's reception of information to assist it in fixing the sentence to be made. The provisions of statutes dating from Deady's General Laws of Oregon (1864) are as follows:

> ORS 137.080: "After a plea or verdict of guilty, or after a verdict against the defendant on a plea of former conviction or acquittal, in a case where a discretion is conferred upon the court as to the extent of the punishment to be inflicted, the court, upon the suggestion of either party that there are circumstances which may be properly considered in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily at a specified time and upon such notice to the adverse party as it may direct."

> ORS 137.110: "No affidavit or testimony or representation of any kind, verbal or written, can be offered to or received by the court in aggravation or mitigation of the punishment, except as provided in ORS 137.080 to 137.100."

In 1931 the Oregon Legislature provided for probation, the appointment of probation officers, and directed:

> ORS 137.530: "Probation officers, when directed by the court, shall fully investigate and report to the court in writing on the circumstances of the offense, criminal record, social history and present condition and environment of any defendant; and unless the court directs otherwise in individual cases, no defendant shall be placed on probation until the report of such investigation has been presented to and considered by the court. Whenever desirable, and facilities exist therefor, such investigation shall include physical and mental examinations of such defendants."

The older statute states that if either party desires, the court, in its discretion, may receive, in a summary hearing, information pertaining to aggravation or mitigation. Such information shall be presented by the testimony of witnesses examined in open court or, in certain cases, by deposition. The information can be presented in no other manner. The latter statute dealing with probation, however, provides that the information may be presented in another manner, i.e., the probation officer's report.

It is obvious that the later statute, ORS 137.530, amended by implication ORS 137.110. Amendment of statutes by implication is recognized when the matter is clear. *State ex rel Med. Pear Co. v. Fowler,* 207 Or 182, 195, 295 P2d 167 (1956). The information the probation officer is directed to obtain by ORS 137.530 is information which can be in aggravation or mitigation. The statutes now authorize the presentation of such information in two ways: by testimony in open court or by the presentence report. The latter is at the sentencing court's discretion.

California has statutes comparable to Oregon's. California Penal Code, §§ 1203, 1204. California courts have held that the later enactment created another procedure for presenting information. The California courts treat the probation officer's report as another procedure grafted onto the old procedure of a hearing on aggravation and mitigation. *People v. Giles,* 70 Cal App2d 872, 161 P2d 623 (1945).

The trial court, in its discretion, may order a presentence report.

Defendant objected to that part of the report which listed the arrests, as distinguished from convictions, of defendant. The case for the relevancy, not the legality, of including arrests in the report is stated in Keve, The Probation Officer Investigates (1960), at 78:

"* * * There is some feeling that such arrests should not be listed in the presentence report, and it is easy to agree that the judge's mind should not be prejudiced by misleading impressions of offenses not proven. One state (Massachusetts), in fact, has gone so far as to provide by law that presentence reports shall not list any arrests for offenses that were not followed by convictions.

"In the sense of strict legal fairness to the defendant this is a piece of caution that has merit. However, there can easily be instances wherein the exclusion of such material would work against the real purpose of the presentence report. You may be reporting, for example, on a man who has just been convicted for the first time of a narcotics violation. Though this is the first actual conviction, you find that he has been arrested previously on many occasions because of suspected narcotics use or handling. Now this would be very essential information for the judge to have in making his decision. This is a record that at least tells what kind of associates the defendant has and indicates

what the problems might be if he were granted probation.

"My stand here is that information about unproven acts may be highly useful and should be included, but of course it is imperative that it be presented very carefully. * * *"

California has repeatedly approved the inclusion of the defendant's arrest record. *People v. White,* 109 Cal App2d 296, 240 P2d 728 (1952); *People v. Escobar,* 122 Cal App2d 15, 264 P2d 571 (1953). In *People v. Hopper,* 20 Cal App2d 108, 66 P2d 459 (1937), the court referred to the record of prior arrests as shown in the presentence report as evidence that the trial court had not abused its discretion in denying the defendant probation.

■ The sentencing court in Oregon has the complete and unrestrained discretion to sentence a convicted defendant up to the maximum for the particular crime as fixed by the legislature. However, the Constitution of Oregon, Art I, § 15, requires that reformation be the object of the sentence, not vindictive justice. Apart from this constitutional requirement, the sentencing court today considers the criminal, as much as the crime, in fixing the sentence. The application of these two principles can cause the same court to give two entirely different sentences to two defendants convicted of committing the same crime.

■ The sentencing court must be provided with a great variety of information in order that it can competently perform its most burdensome function. An arrest cannot be introduced as evidence that the crime has been committed as it is only the opinion of the arresting officer that the defendant has committed the crime. The issue after conviction, however, is not: Was the crime committed? Rather, the issues at this time

are: What is the character of the defendant? Will he be a menace to society if he is not incarcerated? Will he be more likely to respond to probation or to imprisonment? On these issues the record of arrests is obviously very pertinent.

Admittedly, there are instances in which a person is arrested although his conduct is exemplary. Sentencing courts know this; sentencing courts know the difference between an arrest and a conviction. Sentencing courts also know, for example, that a long record of arrests for drunkenness is a highly significant factor to be considered in fixing the sentence. The possibility of harm from furnishing the sentencing court with a convicted defendant's arrest record we consider remote and heavily outweighed by the importance of providing the sentencing court with such information. The inclusion of the defendant's arrest record in the presentence report is not error.

10. The defendant objected generally to the hearsay evidence in the report. In *Coffman v. Gladden,* 229 Or 99, 102, 366 P2d 171 (1961), and earlier decisions cited therein, we held unsworn statements could be received by the trial court in considering the sentence to be imposed. *Williams v. New York,* 337 US 241, 69 S Ct 1079, 93 L ed 1337 (1949), is now cited for the proposition that hearsay evidence is admissible in the sentencing procedure. *Hoover v. United States,* 268 F2d 787 (10th Cir 1959). In the *Williams* case, however, the accuracy of the hearsay statements was not disputed, as the court pointed out.

The Oregon statute requires the probation officer to report on the "circumstances of the offense, criminal record, social history and present condition and environment of any defendant." ORS 137.530. The Cali-

fornia court said of a similar statute: "A probation officer could not make any investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. It is clear that Penal Code, section 1203, contemplates the inclusion of hearsay matter in the probation officer's report." *People v. Valdivia,* 182 Cal App2d 145, 148, 5 Cal Rptr 832 (1960). It was not error for the trial court to consider the hearsay statements in the report.

In his brief the defendant attacks the use of the report because the defendant did not have an opportunity to read it. The record does not show that the defendant did not read it or that he was denied access to it. Defendant's counsel read it and in the record there is no admonition to counsel that he could not reveal its contents to defendant. This assertion of error is not supported by the record.

Remanded for resentencing.