**Filed: June 30, 2011**

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,

v.

ROYCE FRANCIS SPEEDIS,

Petitioner on Review.

(CC CF070533; CA A138616; SC S058310)

On review from the Court of Appeals.*

Argued and submitted November 8, 2010.

Meredith Allen, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Jesse W. Barton, Salem, filed the brief for *amicus curiae* Pacific Sentencing Initiative, LLC.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

*Appeal from Umatilla County Circuit Court, Daniel J. Hill, Judge. 233 Or App 297, 225 P3d 152 (2010).

**Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

KISTLER, J.

Trial courts may impose enhanced sentences in criminal cases when an aggravating factor provides a substantial and compelling reason for doing so. OAR 213-008-0001. The sentencing guidelines list some aggravating factors that trial courts may consider. *See* OAR 213-008-0002(1). Trial courts, however, also may rely on aggravating factors that are not listed (nonenumerated aggravating factors) to impose an enhanced sentence. *See id.* Defendant has argued throughout this litigation that, to the extent the sentencing guidelines permit the use of nonenumerated aggravating factors, they either violate the separation of powers provision of the Oregon Constitution or are vague in violation of the Oregon and the United States Constitutions. The trial court disagreed and imposed an enhanced sentence based on nonenumerated aggravating factors. The Court of Appeals affirmed the trial court's judgment without opinion. *State v. Speedis*, 233 Or App 297, 225 P3d 152 (2010). We allowed defendant's petition for review to consider this recurring issue and now affirm the Court of Appeals decision and the trial court's judgment.

As a matter of state law, three related sets of statutes govern sentencing. *See State v. Dilts*, 336 Or 158, 161-63, 82 P3d 593 (2003) (*Dilts I*) (explaining state sentencing statutes).[1] The first statute establishes maximum indeterminate sentences for

---

[1] In *Dilts I*, this court explained how Oregon's sentencing statutes work as a matter of state law and concluded that those statutes, as the court had interpreted them, complied with the Sixth and Fourteenth Amendments to the United States Constitution. The defendant in *Dilts I* petitioned for certiorari. The United States Supreme Court granted his petition, vacated this court's judgment, and remanded the case for further proceedings in light of its decision in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531,

1

felonies. *See* ORS 161.605. That statute provides, for example, that the maximum sentence for a Class B felony is 10 years. *Id.* Before 1989, if a defendant was convicted of a Class B felony, the trial court was free to set the defendant's sentence anywhere within that 10-year range. The evidence that a trial court could consider in selecting the appropriate sentence within that range was broad, and the trial court had wide latitude to determine the appropriate sentence based on the seriousness of the offense and the character of the offender. *See State v. Stewart/Billings*, 321 Or 1, 9, 892 P2d 1013 (1995) (describing pre-1989 sentencing); *State v. Scott*, 237 Or 390, 399-400, 390 P2d 328 (1964) (identifying the seriousness of the offense and the character of the offender as the relevant criteria at sentencing).

That latitude sometimes led to disparate sentences for similarly situated defendants, and, in 1985, the Oregon legislature created what is now known as the Oregon Criminal Justice Commission to develop recommendations for providing greater uniformity in sentencing. *Dilts I*, 336 Or at 161. In 1989, the commission adopted rules (sentencing guidelines) that set presumptive sentences for crimes based on the general seriousness of the offense and the specific offender's criminal history. *Id.* at 161-62.[2]

---

159 L Ed 2d 403 (2004). *Dilts v. Oregon*, 542 US 934, 124 S Ct 2906, 159 L Ed 2d 809 (2004). Following *Blakely*, this court held on remand that the Sixth and Fourteenth Amendments gave defendants the right to have a jury find aggravating sentencing factors beyond a reasonable doubt. *State v. Dilts*, 337 Or 645, 652, 103 P3d 95 (2004) (*Dilts II*). Even though this court's understanding of federal law in *Dilts I* is no longer valid in light of *Blakely*, *see Dilts II*, 337 Or at 652, this court's explanation in *Dilts I* of how Oregon's sentencing statutes work as a matter of state law remains good law.

[2] Although the commission adopted the sentencing guidelines as rules, the legislature later enacted the sentencing guidelines as statutes. *Dilts I*, 336 Or at 162.

The presumptive sentence for each crime falls within the range set by the maximum indeterminate sentence for that crime.[3] For example, the maximum indeterminate sentence for second-degree assault (one of the crimes for which defendant was convicted) is 10 years. ORS 161.605(2). The sentencing guidelines provide that, for a person with defendant's criminal history, the presumptive sentence for that crime is 37 to 38 months. *See* OAR 213-004-0001 (App 1).

The presumptive sentence sets a target sentence within the range that the indeterminate sentencing statutes permit, and trial courts retain "'discretion to deviate [from the presumptive sentence] for substantial and compelling reasons.'" *Dilts I,* 336 Or at 172 (emphasis omitted; quoting OAR 213-002-0001(2)). That is, although the guidelines start from the premise that the presumptive sentence ordinarily will be the appropriate sentence, they recognize that the two factors that go into the presumptive sentence -- the general seriousness of the offense and the specific offender's criminal history -- may not always capture either the seriousness of a particular offense or all the relevant aspects of an offender's character. *See* Oregon Criminal Justice Council, *Oregon Sentencing Guidelines Implementation Manual* 123-25 (1989) (so stating). Accordingly, the guidelines list nine mitigating and 12 aggravating factors that will justify imposing either a lesser or a greater sentence than the presumptive sentence. OAR 213-008-

---

[3] For some crimes, the Oregon statutes also provide mandatory minimum sentences. *See, e.g.*, ORS 137.700 (setting mandatory minimum sentences for certain crimes). When a court imposes a mandatory minimum sentence, that sentence sets the floor below which the presumptive sentence may not go. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 603-04, 932 P2d 1145 (1997) (explaining the relationship between mandatory minimum sentences and presumptive sentences).

0002(1).

Some of those mitigating and aggravating factors go to the seriousness of the offense. For example, if the harm or loss attributable to a particular offense is either significantly less or significantly greater than is typical, the guidelines permit a court to impose either a downward or an upward departure sentence. *See* OAR 213-008-0002(1)(a)(G) (downward departure); OAR 213-008-0002(1)(b)(J) (upward departure). Other factors go to the character or culpability of the specific offender. For example, if a defendant acted with a diminished mental capacity, a court may impose a lesser sentence. OAR 213-008-0002(1)(a)(C). Conversely, if a defendant has been "[p]ersistent[ly] involv[ed] in similar offenses or repetitive assaults," a court may impose a greater sentence than the presumptive sentence. OAR 213-008-0002(1)(b)(D). The guidelines recognize that, in that case, a more severe sentence may be necessary both to deter the defendant and to protect society.

Finally, the guidelines provide that the list of specific mitigating and aggravating factors is "nonexclusive." OAR 213-008-0002(1). That is, the guidelines recognize that case-specific factors may arise in individual cases that bear on either the seriousness of the offense or the character of the offender that the Criminal Justice Commission did not anticipate. The guidelines accordingly permit trial courts to consider whether nonenumerated, case-specific mitigating or aggravating factors exist that provide a substantial and compelling reason for imposing either a downward or an upward departure sentence. *See id.*

In 2005, the legislature enacted a third set of statutes that establish

4

procedures for determining whether, in a particular case, an aggravating factor exists that will warrant an enhanced sentence. *See* ORS 136.760 to 136.792. Under that law, the prosecutor must identify any aggravating factor (enumerated or nonenumerated) that provides a basis for seeking an upward departure sentence and give the defendant reasonable written notice of that factor. *See* ORS 136.765. The defendant may elect to have a jury find whether that factor is present. *See* ORS 136.770 (governing aggravating factors that "relat[e] to an offense charged in the accusatory instrument"); ORS 136.773 (governing aggravating factors that "relat[e] to the defendant").[4] If the trier of fact finds beyond a reasonable doubt that an aggravating factor that the prosecutor has identified exists, then the trial court may enhance a defendant's sentence if it concludes that that aggravating factor provides a substantial and compelling reason for doing so. *See State v. Upton*, 339 Or 673, 679, 125 P3d 713 (2005).

In this case, the jury convicted defendant of three crimes: first-degree burglary, second-degree assault, and third-degree assault. Before the jury returned its verdict, the prosecutor notified defendant that, in the state's view, eight aggravating factors applied in this case. Of those eight aggravating factors, the jury was ultimately asked to determine whether four of them were present: (1) defendant was on supervision when he committed the current crimes; (2) prior criminal justice sanctions had failed to deter defendant from committing crimes; (3) defendant committed this crime while on

---

[4] Whether an aggravating factor relates to the offense or the offender affects whether the factor may be tried in the guilt phase of the trial or in a separate sentencing phase. ORS 136.770(1); ORS 136.773(1).

release status with other criminal charges pending; and (4) defendant had demonstrated a disregard for laws and rules, making successful probation unlikely. Each of those factors is a nonenumerated aggravating factor.

After considering additional evidence at a separate sentencing hearing, the jury found that the state had proved beyond a reasonable doubt each of those four aggravating factors. The trial court then determined that each aggravating factor, standing alone, provided a substantial and compelling reason for imposing enhanced sentences on defendant's convictions for first-degree burglary and second-degree assault. The trial court sentenced defendant to 72 months in prison rather than the presumptive sentence of 37 to 38 months on the second-degree assault conviction. It also sentenced him to 72 months in prison rather than the presumptive sentence of 37 to 38 months on the first-degree burglary conviction and ordered that those sentences would run concurrently.[5] The court did not impose a sentence on defendant's conviction for third-degree assault but ruled that defendant's sentence for that offense merged into his sentence for second-degree assault.[6]

Throughout this litigation, defendant has argued that a trial court may not

---

[5] Because second-degree assault is a Measure 11 crime, the court imposed a 70-month mandatory minimum sentence on that conviction. *See* ORS 137.700(2)(a)(G). Because of that mandatory minimum sentence and the trial court's decision that the sentences on the burglary and second-degree assault convictions would run concurrently, the net effect of imposing upward departure sentences in this case is that defendant's sentence is two months longer than it otherwise would have been.

[6] Defendant does not argue that merging the sentences, as opposed to merging the convictions for second- and third-degree assault, is inconsistent with *State v. White*, 341 Or 624, 147 P3d 313 (2006), and we do not address that issue.

6

rely on nonenumerated aggravating factors to impose an enhanced sentence. Doing so, he reasons, violates the separation of powers provision of the Oregon Constitution. *See* Or Const Art III, § 1 (allocating governmental power among the legislative, executive, and judicial departments). Additionally, defendant contends that, to the extent the sentencing guidelines permit prosecutors to base a request for an enhanced sentence on nonenumerated aggravating factors, the guidelines are vague in violation of Article I, sections 20 and 21, of the Oregon Constitution and the Due Process Clause of the United States Constitution. We begin with defendant's separation of powers argument.

Article III, section 1, of the Oregon Constitution provides:

> "The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

A separation of powers claim under this section may turn on one of two issues. *MacPherson v. DAS*, 340 Or 117, 134, 130 P3d 308 (2006). The first issue is "whether one department of government has 'unduly burdened' the actions of another department" in carrying out its core functions. *Id.* The second issue is "whether one department has performed functions that the constitution commits to another department." *Id.* Defendant does not contend that, in relying on nonenumerated aggravating factors, the judiciary has unduly burdened the legislature's ability to carry out its core functions. Rather, defendant argues that, in determining whether nonenumerated aggravating factors provide substantial and compelling reasons for imposing an enhanced sentence, the judiciary is exercising a power that the constitution has entrusted to the legislature.

7

Defendant's argument fails to distinguish two related but separate lines of authority. This court has recognized that "[d]etermining the range of possible sentences for particular crimes historically has been a legislative, rather than a judicial, function." *State ex rel Huddleston v. Sawyer*, 324 Or 597, 615, 932 P2d 1145 (1997). Consistently with that principle, the court has explained that, "[w]hen a court acts beyond the bounds of its sentencing authority, it infringes upon the power of the legislature to determine the manner of punishment." *State v. Leathers*, 271 Or 236, 240, 531 P2d 901 (1975). Conversely, this court has recognized that determining where within a legislatively prescribed range a particular defendant's sentence falls historically has been a judicial function. *See Stewart/Billings*, 321 Or at 9 (explaining that sentencing courts traditionally have considered a range of case-specific factors that bear on both the offense and the offender in determining the appropriate sentence within legislative limits); *Scott*, 237 Or at 399-400 (same).[7]

In relying on nonenumerated sentencing factors to decide whether to impose an upward or downward departure sentence, a trial court is not acting "beyond the bounds of its sentencing authority" and thus is not infringing on the legislature's authority

---

[7] To describe that authority solely as a judicial function is not entirely accurate. Historically, prosecutors identified and submitted the facts at a sentencing hearing that the trial courts then considered in deciding whether the seriousness of the offense and the character of the offender warranted a greater or lesser sentence within the range permitted by sentencing statutes. *See Scott*, 237 Or at 396-97 (discussing practice under the Deady Code). A prosecutor's ability (discussed above) to identify the aggravating factors that may result in an enhanced sentence is consistent with that historical allocation of authority. *Cf. Huddleston*, 324 Or at 616 (explaining that a prosecutor's ability to charge crimes carrying a mandatory minimum sentence did not violate separation of powers principles).

8

to set sentencing limits. *Cf. Leathers*, 271 Or at 240. Rather, it is acting within the limits that the legislature has set, *Dilts I*, 336 Or at 171, and it is exercising a trial court's traditional authority to determine, within statutory limits, the specific facts and circumstances that will result in a sentence designed to fit both the offense and the offender. If trial courts historically had broad discretion to determine the appropriate sentence within the wide range that indeterminate sentencing statutes permitted, it is difficult to see why a trial court's exercise of that same discretion within the narrower range that the sentencing guidelines permit constitutes an unconstitutional exercise of legislative authority.[8]

Defendant's contrary argument, as we understand it, rests on the assumption that a presumptive sentence establishes, as a matter of state law, the maximum sentence that a trial court can impose. It follows, defendant contends, that a trial court may not depart from a presumptive sentence unless the legislature either has specified the terms on which a court may depart or has delegated the authority to trial courts to identify those terms. And defendant focuses the majority of his separation of powers argument on the claim that, in authorizing the use of nonenumerated sentencing factors, the legislature has failed to provide a constitutionally sufficient delegative standard.

One problem with defendant's separation of powers argument is the assumption that underlies it. As this court explained in *Dilts I*, the legislature did not intend that presumptive sentences would mark the outer limits of a trial court's sentencing

---

[8] As our reasoning makes clear, our resolution of defendant's separation of powers argument focuses on and is limited to sentencing issues.

authority. 336 Or at 171. Rather, the court held that, as a matter of state law,

> "neither the wording nor the structure of the sentencing guidelines or the related statutes support [the] defendant's assertion that the legislature intended the presumptive sentences in the sentencing guidelines to constitute the statutory maximum sentences for the offenses to which they apply."

*Id.*[9] Not only does a presumptive sentence not define the outer boundaries of a trial court's sentencing authority, as defendant's argument assumes, but the sentencing guidelines expressly authorize trial courts to decide whether nonenumerated aggravating and mitigating factors warrant imposing a greater or a lesser sentence than a presumptive sentence. *Id.* at 175-76. In imposing a departure sentence based on nonenumerated aggravating factors, a trial court is not acting beyond the bounds of its sentencing authority * * *." *Cf. Leathers*, 271 Or at 240. Rather, it is acting within the limits that the legislature has set. *See Dilts I,* 336 Or at 171, 175. Defendant's separation of powers argument provides no reason for holding the trial court's use of nonenumerated sentencing factors unconstitutional.

Defendant argues alternatively that, to the extent the guidelines permit reliance on nonenumerated aggravating factors in deciding whether to impose an enhanced sentence, the guidelines are vague in violation of Article I, sections 20 and 21, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment.

---

[9] We recognize, of course, that, under *Blakely*, a presumptive sentence is a maximum sentence for purposes of the Sixth and Fourteenth Amendment. *See Dilts II*, 337 Or at 652. A presumptive sentence, however, is not a maximum sentence for the purposes of state law; that is, for the purposes of analyzing defendant's state constitutional separation of powers argument, a presumptive sentence does not set the outer boundary beyond which a trial court may not go. *See Dilts I*, 336 Or at 171.

Specifically, defendant argues that nonenumerated aggravating factors: (1) do not provide fair notice to defendants of the circumstances that will result in a greater sentence, and (2) give prosecutors unfettered discretion to decide, after the fact, the circumstances that will result in a greater sentence.

Before turning to defendant's arguments, it is helpful to put them in context. The jury found beyond a reasonable doubt that each of the four nonenumerated aggravating factors that the prosecutor had identified was present, and defendant does not contend that the record does not support the jury's findings. Nor does defendant challenge the trial court's conclusion that each of those factors, standing alone, provided a substantial and compelling reason to impose an enhanced sentence.[10] Finally, defendant does not dispute that, before he committed the crimes that resulted in his burglary and assault convictions, the Oregon Court of Appeals had recognized that each of the four nonenumerated aggravating factors that the prosecutor identified in this case provided a basis for imposing an enhanced sentence; that is, even though the sentencing guidelines do not specifically list those four factors, the Court of Appeals had recognized before defendant committed the burglary and assaults that each factor was an aggravating factor within the meaning of the guidelines.[11]

---

[10]     Such an argument would be difficult to make. Each of the four aggravating factors on which the state relied in this case concerns a defendant's character or status. Each factor concerns, in one way or another, whether current or prior judicial sanctions have failed to deter defendant from continuing to commit crimes and, if they have failed, whether an enhanced sentence is appropriate.

[11]     *See State v. Williams*, 133 Or App 191, 195 n 2, 891 P2d 3, *rev den*, 321 Or 512 (1995) (crime committed while the defendant was on supervision); *State v. Nelson*,

With that background in mind, we turn to defendant's argument that the sentencing guidelines are vague in violation of Article I, sections 20 and 21, because they do not give defendants "fair notice" of the circumstances that will result in an enhanced sentence. We note, at the outset, that this court's cases have not always looked in the same direction on the question whether "fair notice" is a component of a state constitutional vagueness analysis. In *State v. Graves*, 299 Or 189, 197, 700 P2d 244 (1985), the court held that the statute prohibiting first-degree burglary was vague in violation of Article I, sections 20 and 21, of the Oregon Constitution because it failed to give defendants fair notice of the conduct that it prohibited. Later, in *State v. Chakerian*, 325 Or 370, 382-84, 938 P2d 756 (1997), the court reaffirmed that fair notice of the elements of a crime is a state constitutional vagueness concern, although the court did not find the statute in that case unconstitutionally vague.

More recently, however, the court explained in *Delgado v. Souders*, 334 Or 122, 144 n 12, 46 P3d 729 (2002), that, in referring to fair notice in *Graves*, the court had incorrectly imported federal due process concerns into state constitutional vagueness analysis. And the court's holding expressly rested on the proposition that "fair notice" is not an aspect of vagueness analysis under Article I, section 20, of the Oregon Constitution. *Id.* at 146-47.[12] Later, the court reaffirmed in *State v. Illig-Renn*, 341 Or

_____

119 Or App 84, 86-87, 849 P2d 1147 (1993) (on release with other criminal charges pending); *State v. Zavala-Ramos*, 116 Or App 220, 223, 840 P2d 1314 (1992) (disregard for laws and rules, making successful probation unlikely); *State v. Hill*, 112 Or App 213, 214, 827 P2d 951 (1992) (prior criminal judicial sanctions failed to deter).

[12]     Because the defendant in *Delgado* claimed that a civil statute was vague,

228, 239 n 4, 142 P3d 62 (2006), that "[t]he 'fair notice' component of the vagueness analysis is not an issue under the Oregon Constitution."

Defendant argues that the discussions of fair notice in *Delgado* and *Illig-Renn* were *dicta* and that we should follow the holding in *Graves* rather than the *dicta* in those cases. We read *Delgado* and *Illig-Renn* differently. In each case, the court's holding turned on the conclusion that "fair notice" is not an aspect of a state constitutional vagueness analysis; specifically, in each case, the court declined to analyze the defendant's state constitutional vagueness claim to determine whether the challenged statutes provided fair notice of the conduct that they prohibited. *Illig-Renn*, 341 Or at 239-40; *Delgado*, 334 Or at 146-47. Rather, the only issue that the court identified as encompassed within a state constitutional vagueness claim was whether a statute or rule gave the police, the prosecutor, or the court either "uncontrolled discretion" or "unbridled discretion * * * to decide what is prohibited in a given case." *Illig-Renn*, 341 Or at 239 (quoting *Graves*, 299 Or at 195). Contrary to defendant's argument, we cannot dismiss the reasoning in *Delgado* and *Illig-Renn* as *dicta*.[13] It follows that, in deciding defendant's state constitutional vagueness claim in this case, we consider only whether

_____

only Article I, section 20 applied. 334 Or at 145. That case did not require the court to decide whether the statute was vague in violation of the *ex post facto* clause of Article I, section 21, which applies only to criminal statutes. *Id.*

[13]    Defendant has not argued that *Delgado* and *lllig-Renn* should be overruled because they were "wrongly considered or wrongly decided." *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 54, 11 P3d 228 (2000) (explaining when this court will consider overruling a state constitutional holding). Accordingly, we leave for another day whether those cases correctly held that "fair notice" is not a component of a state constitutional vagueness analysis.

13

the sentencing guidelines provide an ascertainable standard that guided the prosecutor in identifying which nonenumerated sentencing factors warranted imposition of a departure sentence. *See Illig-Renn*, 341 Or at 240 (identifying that standard).

We refer to the prosecutor's exercise of discretion because, once the prosecutor notified defendant of the specific aggravating facts on which the state intended to rely, the jury and the trial court had a limited role to play. The question for the jury was whether the state had proved beyond a reasonable doubt the specific aggravating factors that the prosecutor had identified. Once the jury found that the state had proved those factors, then the question for the trial court was whether those factors, individually or collectively, provided a substantial and compelling reason for imposing an upward departure sentence. The trial court had no discretion to decide whether other aggravating factors (either enumerated or nonenumerated) might apply. *See* ORS 136.765 (providing that only the aggravating factors of which the prosecutor has provided notice to the defendant may be used to enhance a sentence).

To be sure, in deciding whether the aggravating factors that the jury found provided a substantial and compelling reason for imposing an enhanced sentence, the trial court exercised a limited measure of discretion. *See Upton*, 339 Or at 680 (explaining that, "even if the jury finds that an aggravating or enhancing factor was proved, the court is not required to order a sentencing departure based on that finding"). But we do not understand defendant to argue that that exercise of discretion injected an element of vagueness into the exercise. Rather, as we understand defendant's argument, he contends that the sentencing guidelines are vague in violation of the state constitution because they

14

do not sufficiently limit the prosecutor's discretion to identify, in the first instance, the nonenumerated aggravating circumstances that can result in an enhanced sentence. We turn to that issue.

More than 50 years ago, this court rejected a vagueness challenge to an indeterminate sentencing statute. *Smallman v. Gladden*, 206 Or 262, 276-77, 291 P2d 749 (1956). As explained above, indeterminate sentencing statutes gave trial courts broad discretion to sentence defendants within a wide statutory range (in Oregon, anywhere within a 10-year range for Class B felonies and within a 20-year range for Class A felonies). Although Oregon's indeterminate sentencing statutes did not specifically identify any criteria to guide a trial court's exercise of its discretion, this court's cases made clear that two criteria applied: the seriousness of the offense and the character or status of the offender. *See, e.g.*, *State v. Biles*, 287 Or 63, 72, 597 P2d 808 (1979); *Scott*, 237 Or at 399-400.

As explained above, the sentencing guidelines incorporate those same criteria. Not only is the presumptive sentence a product of the seriousness of the offense and the offender's criminal history (one indicator of an offender's character), but the enumerated aggravating and mitigating factors are further specifications of those two criteria. It follows, we think, that those same criteria provide guidance for prosecutors and courts in determining which nonenumerated aggravating or mitigating factors will warrant a departure sentence. *Cf. State v. Kurtz*, 350 Or 65, 74, 249 P3d 1271 (2011) (explaining that, when a general term is accompanied by a "nonexclusive list of examples," the specific examples shed light on the meaning of the general term).

Put differently, the same criteria that informed a sentencing court's exercise of its discretion under the indeterminate sentencing statutes apply with equal force to the identification of nonenumerated aggravating and mitigating factors under the sentencing guidelines.  If those criteria were sufficient to defeat a vagueness challenge to indeterminate sentencing statutes, we cannot say that those same criteria are not a sufficient check on the prosecutor's discretion to identify nonenumerated aggravating factors.  That is particularly true since the sentencing guidelines place further limitations on the exercise of sentencing discretion.  They require that any nonenumerated factor provide substantial and compelling reasons for imposing a departure sentence, OAR 213-008-0001, and they prohibit the use of nonenumerated aggravating factors that merely duplicate elements of the offense, that are used to rank the seriousness of the crime in setting the presumptive sentence, or that are a necessary element of a mandatory sentence, OAR 213-008-0002(2) and (3).  The discretion that the sentencing guidelines give prosecutors to identify and courts to determine nonenumerated aggravating factors is neither standardless nor unfettered.  That aspect of the sentencing guidelines is not vague in violation of Article I, sections 20 and 21, of the Oregon Constitution,[14] and we turn to defendant's federal vagueness argument.

---

[14]    Our state constitutional vagueness holding is limited to sentencing and, within that context, to sentencing factors that bear on a defendant's character.  We have no occasion to consider whether greater specificity would be required either for a statute defining the elements of an offense or for sentencing factors that relate to the offense rather than the offender.  *Cf. State v. Ice*, 343 Or 248, 257-60, 170 P3d 1049 (2007) (distinguishing, for the purpose of Article I, section 11, between sentencing factors that relate to the offense and those that relate to a defendant's character or status), *rev'd on other grounds*, *Oregon v. Ice*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009).

16

Under the Due Process Clause of the Fourteenth Amendment, a criminal statute will be unconstitutionally vague if it fails to provide "fair warning" of the acts that will expose a person to criminal penalties; that is, a statute must "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he [or she] may act accordingly." *Illig-Renn*, 341 Or at 241 (quoting *Grayned v. City of Rockford*, 408 US 104, 108, 92 S Ct 2294, 33 L Ed 2d 222 (1972)). As the United States Supreme Court has explained, however, even if an "otherwise uncertain statute," standing alone, would fail to provide constitutionally adequate notice of the acts that expose a person to criminal liability, the statute will satisfy due process if "[a] prior judicial decision has fairly disclosed [the charged conduct] to be within [the statute's] scope." *United States v. Lanier*, 520 US 259, 266, 117 S Ct 1219, 137 L Ed 2d 432 (1997); *accord Rogers v. Tennessee*, 532 US 451, 459, 121 S Ct 1693, 149 L Ed 2d 697 (2001) (acknowledging that rule).

As explained above, before defendant committed the crimes that gave rise to his burglary and assault convictions, the Court of Appeals had identified each of the four nonenumerated aggravating factors at issue in this case as permissible grounds for imposing an enhanced sentence under the sentencing guidelines. Even if the sentencing guidelines, standing alone, would not provide sufficient notice that those factors would justify an enhanced sentence, those appellate decisions did and, in doing so, satisfied due process. *See Lanier*, 520 US at 266.[15] If those cases provided sufficient notice to

---

[15] The Court held in *Lanier* that a decision need not be from a court of last resort to provide fair notice; an intermediate appellate decision will suffice. 520 US at

17

defendants under the Due Process Clause, we think that they also provided sufficient guidance to prosecutors in identifying those aggravating factors that would support the imposition of an enhanced sentence.[16] The trial court and the Court of Appeals correctly rejected defendant's state and federal constitutional challenges to the use of nonenumerated aggravating factors.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

268-69.

[16] It may be that the prior Court of Appeals decisions recognizing specific nonenumerated aggravating factors would be a complete answer to defendant's state vagueness claims, as well as to his federal vagueness claims. However, having resolved defendant's state vagueness claims on different grounds, we need not decide that issue.