BALZER MACHINERY COMPANY, *Respondent, v.*
KLINELINE SAND & GRAVEL COMPANY,
*Defendant,* CLARK LEASING CORPORATION
ET AL, *Appellants.*

533 P2d 321

*Jeffrey L. Dye,* Portland, argued the cause for appellants. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener and Dean D. DeChaine, Portland.

*Thomas J. Greif,* Portland, argued the cause for respondent. With him on the brief were White, Sutherland, Parks & Allen and Russell M. Allen, Portland.

DENECKE, J.

Does the holder of a nonpossessory artisan's lien have priority over the holder of a prior perfected security interest? That is the principal issue.

Plaintiff, Balzer Machinery Co., brought this suit to foreclose its nonpossessory lien. The lien arose out of repairs made to certain rock crushing equipment which was being operated by defendant Klineline Sand

& Gravel Co. under a lease-purchase agreement. The defendant Clark Leasing Corp. was the assignee of the lessor-vendor's interest. Clark subsequently repossessed the rock crusher and sold it to the defendant Spencer. Klineline is not involved in this appeal.

The lease-purchase agreement was entered into on April 29, 1970. It was stipulated that the lessor-vendor had a security interest in the equipment. Also, on April 29, 1970, a duly executed financing statement was filed with the appropriate government authorities. Balzer Machinery Co. performed repair work on the equipment at the request of Klineline in February 1972. Balzer then claimed a nonpossessory lien on the equipment and filed appropriate notice pursuant to ORS 87.090. On June 1, 1972, Klineline was in default on its lease-purchase agreement. Clark repossessed the equipment and sold it to Spencer.

The trial court foreclosed Balzer's lien and held it was prior to Clark's interest. Clark appeals.

The resolution of this case depends upon the interpretation of several statutes. ORS 79.3100 of the Secured Transactions chapter of the Uniform Commercial Code provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

ORS 87.085 provides for a nonpossessory lien for labor or materials expended upon equipment. This is termed an artisan's lien. ORS 87.090 provides for the filing of notice of such lien.

In 1972 when these transactions occurred ORS 87.100 provided:

> "* * * The lien of every person as provided in ORS 87.085 shall be superior to the rights of the person holding the title to the chattel or any lien thereon antedating the time of the expenditure provided in ORS 87.085 by such lien claimant. However, the lien filed under the provisions of ORS 87.090 shall only have such priority over a chattel mortgage duly recorded prior to the date of the expenditure claimed under the lien during the period the lien claimant retains possession of the chattel; * * *."

ORS 79.1020(2) provides, in part: "ORS 79.1010 to 79.5070 [the Secured Transactions chapter of the Uniform Commercial Code] do not apply to statutory liens except as provided in ORS 79.3100."

Clark makes several alternative arguments suggesting how these statutes should be interpreted in order to grant Clark's security interest priority over Balzer's nonpossessory lien.

Clark argues that because ORS 79.3100 expressly grants an artisan's possessory lien priority over a perfected security interest, the statute impliedly denies priority to a nonpossessory lien. Clark further argues that ORS 79.3100 was enacted subsequent to ORS 87.100 and by implication repealed any provisions of ORS 87.100 inconsistent with ORS 79.3100.

The only decision we have been referred to precisely deciding this issue holds: "We conclude the plain import of T. C. A. § 47-9-310 is the repairman must retain possession of the vehicle repaired in order to maintain the *priority* of his statutory lien, acquired under T. C. A. § 64-1901 et seq., over that of a previously perfected security interest in the same vehicle."

*Forrest Cate Ford, Inc. v. Fryar,* 62 Tenn App 572, 577, 465 SW2d 882 (1970).

With one exception, the few writers who have discussed this subject have been in accord with this reasoning.

"To construe Section 9-310 other than restrictively is to create a threat to security interests created and perfected under Article 9. When so construed restrictively it insures that the person who contributes to the value of goods, and retains possession until paid, is protected." Miller, *Liens Created by Operation of Law: A Look at Section 9-310 of the Uniform Commercial Code,* 76 Com L J 221, 231 (1971).

"So long as the repairman retains possession of the set, if he has a lien by statute or common law he is entitled to priority unless the lien is statutory and the statute provides otherwise." Henson, Secured Transactions, 74 (1973).

Gilmore has reservations:

"* * * The hard question is whether the possessory language in §9-310 should be taken to reverse priorities (and subordinate the lien) where the lien statute (expressly or by judicial construction) gives priority to the filing lienor without possession. That may be the most obvious construction of §9-310, but the unexplained appearance of the possessory language in the 1956 draft does not lead inevitably to the conclusion that the draftsmen deliberately aimed at subordinating nonpossessory liens even when the liens, quite apart from Article 9, already enjoyed a statutory or judicial priority. In the absence of judicial construction, the question must be considered open." 2 Gilmore, Security Interests in Personal Property, 888 (1965).

Even if we construe the language "goods in the possession of such person," as used in ORS 79.3100,

to impliedly deny priority to a lien upon goods not in possession, two ancillary problems remain before we can accept Clark's argument.

ORS 79.3100, stating that a possessory lien has priority, provides, "unless the lien is statutory and the statute expressly provides otherwise." We agree with Clark that the most likely meaning of that language and the intent of the statute is that it refers to the possessory lien statutes; that is, a "lien upon goods in the possession of that person given by statute," and not to statutes such as ORS 87.100.

■ The other problem is, did the legislature, in enacting ORS 79.3100 of the UCC, by implication amend the nonpossessory lien statute, ORS 87.100? We believe the legislature necessarily did so. ORS 79.3100, as we interpret it, provides that when an artisan repairs goods subject to a prior perfected security interest, the artisan's lien takes priority over the security interest only if the artisan retains possession. ORS 87.100 is to the contrary. It provides, regardless of whether the artisan lien holder retains possession, that an artisan's lien is prior to all other lien claimants except the lien of a chattel mortgagee.[①]

■ Amendment by implication is not favored but "is recognized when the matter is clear." *State v. Scott,* 237 Or 390, 397, 390 P2d 328 (1964). In this instance we find it to be clear. The two statutes are inconsistent and, therefore, the later will prevail.

■ We construe ORS 79.3100 to be the applicable statute and hold that it provides that a perfected se-

---

[①] We assume Clark's interest was not that of chattel mortgagee; if it was, it would prevail upon that ground.

curity interest has priority over a nonpossessory artisan's lien.

We have not been able to find a substantial reason for the distinction between possessory and nonpossessory liens.[2] The Oregon Legislature, however, has made and continues to make such a distinction in ORS 87.100. Our construction is, as Gilmore admits, the most obvious construction of the language. The result we reach by such a construction is the same as would be reached under the statute as amended subsequent to the events of this case. The legislature brought ORS 87.100 into conformance with the UCC and provided that an artisan lien holder would have priority over a prior "duly perfected security interest" only if the lien holder retained possession.

■■ Balzer contends that even if Clark has priority, the sale by Clark to Spencer must be set aside because Balzer was not given notice of sale. ORS 79.5040(3) requires notice of sale to be given to, among others, one "who is known by the secured party to have a security interest in the collateral." The only evidence that Clark had any knowledge of Balzer's claim of lien was that Balzer filed notice of its nonpossessory lien. This is not "knowledge" as that word is used in the UCC. ORS 71.2010(25)(c) provides: "A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it."[3]

Reversed.

---

[2] For a possible reason for the distinction see 76 Yale L J 1649, 1656 (1967).

[3] Spencer's lack of actual knowledge also answers plaintiff's contention that Spencer was not a "good faith buyer."

In view of our disposition of the case, we do not have to decide the conflicts of law issue posed by Clark.