In the Matter of the Suspension of
the Driving Privileges of

Marc Francis BIANCO,
*Petitioner-Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a division of the Department of Transportation,
*Respondent-Appellant.*

Clackamas County Circuit Court
CV11050692; A149599

307 P3d 470

Rebecca M. Johansen, Assistant Attorney General,
argued the cause for appellant. With her on the brief were

John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Robert G. Thuemmel argued the cause for appellant. With him on the brief was Rankin Johnson IV.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

The Driver and Motor Vehicle Services Division of the Oregon Department of Transportation (DMV) appeals a circuit court judgment setting aside an administrative order suspending petitioner's driving privileges. The circuit court ruled that DMV had violated one of its own administrative rules, OAR 735-090-0120, which concerns rescheduling a suspension hearing in the event that a subpoenaed officer is unable to attend the hearing. We agree with DMV that the administrative law judge (ALJ) correctly interpreted the applicable administrative rule, but we agree with petitioner that the order issued by the ALJ nonetheless lacks substantial reason and must be remanded for reconsideration. Accordingly, we reverse the judgment of the circuit court, and we remand the judgment with instructions to remand to DMV for further proceedings consistent with this opinion.

Although this case comes to us on appeal from the circuit court, we review the underlying administrative order to determine whether the ALJ correctly interpreted and applied the law and whether the order is supported by substantial evidence. *See* ORS 813.450(4); *Staglin v. DMV*, 227 Or App 240, 242, 205 P3d 90, *rev den*, 346 Or 364 (2009). We state the facts consistently with the ALJ's factual findings, which are not challenged by the parties.

On March 11, 2011, petitioner was arrested for driving under the influence of intoxicants and was subsequently served with a notice of DMV's intent to suspend his driving privileges based on his refusal to take a breath test. *See* ORS 813.410(1) (providing that, upon receiving a police report of a refusal to take a breath test, DMV shall suspend driving privileges 30 days after arrest, "unless, at a hearing described under this section, [DMV] determines that the suspension would not be valid as described in this section"). Petitioner requested a hearing to challenge that proposed suspension, and a hearing was scheduled for March 31, 2011, before an ALJ from the Office of Administrative Hearings (OAH), which conducts suspension hearings on behalf of DMV.

On March 26, 2011, OAH was informed that the arresting officer, Deputy Steinberg, was unavailable to appear at the March 31 hearing because of a previously approved vacation. Consequently, OAH issued an order stating that "[a] hearing shall be scheduled to determine the validity of the suspension under ORS 813.410 as soon as practicable." The order also rescinded the proposed suspension of petitioner's driving privileges pending the outcome of that later hearing.

On March 31, 2011, OAH sent petitioner a "Notice of Rescheduled Hearing" that set the new hearing date for April 8, 2011. For reasons that do not appear in the record, OAH subsequently informed petitioner and Steinberg that the April 8 hearing was being canceled and rescheduled, despite the fact that petitioner and Steinberg were available that day. OAH then sent out a new "Notice of Rescheduled Hearing," setting the hearing date for April 27, 2011.

At the outset of the April 27 hearing, petitioner's counsel "move[d] to dismiss this as not timely and outside of our thirty days"—"thirty days" referring to the 30-day window from the time of arrest in which DMV must hold a hearing and issue its suspension order. *See* ORS 813.410(4)(e) ("Except as provided in ORS 813.440 or upon remand under ORS 813.450, the department shall hold the hearing and issue a final order within 30 days of the date of the arrest * * *."). Petitioner's counsel explained:

"* * * So, [Steinberg] had been notified of the April 8th date. I had been notified of the April 8th date. * * * The record is not clear why we were waived off or what happened. And, the hearing is somehow on this record mysteriously reset from that date to today's date[.] * * * So, in order to get there, there has to be something in the record and somebody has to have found that April 8th was canceled for an appropriate reason, which may or may not constitute an error of the Department under [OAR 73-090-0000(2)], where error of the Department is defined. Usually, there is a finding on that in order to perpetuate the life of a hearing. This record that you were provided, just simply has a gap in it. It didn't even provide you, I guess, with the April 8th, 2011, hearing notice * * *. [Steinberg] knew about it, I knew about it, we received a notice of the schedule of that

hearing, we were prepared to attend it and you don't have any information on that. I think the burden would be on the Division to show that there had been an error. That hasn't been provided and you haven't been provided with any ALJ's previous order finding an error. So, under ORS 813.440, I think this hearing should be dismissed. That's my motion."

The ALJ took the motion under advisement, and the parties proceeded to the merits of the case.

After the hearing, the ALJ issued a final order that denied petitioner's motion to dismiss and that, on the merits, affirmed the suspension of his driving privileges under the implied-consent law. With respect to the motion to dismiss, the ALJ explained:

"Petitioner, through counsel, made a motion to dismiss, contending that the suspension should be dismissed because the hearing was not held within 30 days of the date of arrest.

"Under ORS 813.410, a person arrested for [driving under the influence of intoxicants] who makes a timely hearing request is entitled to have a hearing and determination on the merits of the proposed suspension of the person's driving privileges within 30 days of the arrest date, unless the provisions of ORS 813.440 are applicable. Under ORS 813.440(1)(d), the Department may provide a hearing to determine the validity of a suspension outside the time requirements of ORS 813.410 due to '[t]he inability of a subpoenaed police officer to appear due to the officer's illness, vacation or official duty conflicts.' OAR 735-090-0120(1), the administrative rule implementing ORS 813.410 and 813.440, also includes an officer's vacation.

"The record reflects that Deputy Steinberg, who was subpoenaed to appear for a hearing on March 31, 2011, was unable to attend the hearing on that date because he had employer-approved vacation leave. Therefore, the requirements of ORS 813.440(1)(d) and OAR 735-090-0120 have been met, and the hearing was properly reset. *Where, as here, a showing has been made under ORS 813.440, the hearing may be held outside the 30 day time requirement of ORS 813.410.*

"As counsel correctly noted, the record does not reflect the reason why OAH moved the rescheduled hearing from

April 8, 2011 to April 27, 2011. *However, once it has been determined that a subpoenaed police officer was unable to appear at the first scheduled hearing for a reason set out in ORS 813.440(1)(d), there is no set timeline for holding the rescheduled hearing. \* \* \* The applicable administrative rule, OAR 735-090-0120, only requires that 'a hearing will be re-scheduled as soon as practicable.'* There has been no due process violation, nor any violation of the provisions of ORS 813.410 or 813.440 in this case. Therefore, the Motion to Dismiss is denied."

(Emphasis added.)

Petitioner then sought judicial review of the ALJ's order in the circuit court. *See* ORS 813.410(8)(a) (providing for such review of suspension orders). Petitioner focused his arguments on the application of OAR 735-090-0120(1), which provides, "If a subpoenaed police officer is unable to appear at a hearing under ORS 813.410 due to an officer's illness, vacation or official duty conflicts, *a hearing will be re-scheduled as soon as practicable.*" (Emphasis added.) Petitioner argued that, "in this case, 'reschedule' and 'held' have to be considered or read synonymously with each other in order to make that provision have any meaning whatsoever"; he further argued that the hearing had not been held "as soon as practicable," because it could have been held on the first rescheduled date, April 8, when the police officer and petitioner's attorney were available.

The circuit court agreed with petitioner, explaining that "reschedule" and "held" "must be read to be the same thing to make the statutory scheme make any sense." In a judgment setting aside the administrative order, the circuit court explained:

"Under OAR 735-090-0120, once an official duty conflict has been granted, then the new hearing must be 'rescheduled as soon as practicable." This language also implicitly includes the requirement that the rescheduled hearing be 'held' as soon as practicable. *The simple act of rescheduling the hearing promptly without holding it promptly as well does not satisfy the intent of this administrative rule.*"

(Emphasis added.)

DMV now appeals that judgment, arguing that the plain text of the administrative rule is inconsistent with the circuit court's ruling. Petitioner, for his part, defends the circuit court's interpretation of the rule. Petitioner further argues—apparently as an alternative basis for affirmance— that the ALJ's order lacks substantial reason because "DMV did not offer any reason below to justify the second rescheduling."

As previously noted, we review the underlying administrative order, not the circuit court's judgment. 257 Or App at 448. In any event, the matter turns on the interpretation of OAR 735-090-0120, a question of law that we must assess independently. *See State v. Hogevoll*, 348 Or 104, 109, 228 P3d 569 (2010) ("In construing an administrative rule, we apply the same analytical framework that applies to the construction of statutes."); *Tye v. McFetridge*, 342 Or 61, 69, 149 P3d 1111 (2006) ("In interpreting an administrative rule * * * our task is the same as that involved in determining the meaning of a statute, which is to discern the meaning of the words used, giving effect to the intent of the body that promulgated the rule."). Thus, "[w]e begin by considering the text of the rule itself, together with its context, which includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 533, 185 P3d 446 (2008).[1]

In this case, the rule at the heart of the parties' dispute, OAR 735-090-0120(1), is one of many related provisions (statutes and rules) concerning the handling of implied-consent hearings. We begin with the statutory

---

[1] The ALJ's interpretation of OAR 735-090-0120 is not entitled to the type of deference set forth in, among other cases, *Coffey v. Board of Geologist Examiners*, 348 Or 494, 509, 235 P3d 678 (2010) (an agency's plausible interpretation of its own administrative rule is entitled to deference), because the OAH was not the body that promulgated the rule. *See OR-OSHA v. Don Whitaker Logging, Inc.*, 329 Or 256, 262 n 7, 985 P2d 1272 (1999) (such deference applies "only when the body interpreting the rule also is the body that promulgated it"); *see also* ORS 813.410(4)(a) ("The hearing shall be conducted by an administrative law judge assigned from the Office of Administrative Hearings established under ORS 183.605."); OAR 735-001-0020(1) (concerning authority of ALJ to issue final orders "without first issuing a proposed order in a contested case hearing conducted for the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV)").

scheme for implied-consent hearings set out in the Oregon Vehicle Code, because it provides important, if not dispositive, context for interpreting OAR 735-090-0120(1) and assessing the adequacy of the ALJ's order.

Under the Oregon Vehicle Code, any person who operates a motor vehicle on a highway "shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath * * * for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants * * *." ORS 813.100. If a person refuses to take the breath test upon arrest, "the person's driving privileges are subject to suspension under ORS 813.410," and the police officer must, among other things, (a) immediately take custody of the person's Oregon driver's license or permit, (b) provide the person with a written notice of intent to suspend the person's license, (c) issue a temporary 30-day driving permit,[2] and (d) deliver the police report to DMV. ORS 813.100(3).

When DMV receives that police report, it is required to suspend the person's Oregon driving privileges on the 30th day following the arrest, "unless, *at a hearing described under this section*, the department determines that the suspension would not be valid as described in this section." ORS 813.410(1) (emphasis added). To obtain a "hearing described under this section"—that is, under ORS 813.410—the arrested person must notify DMV of that desire within 10 days of the arrest. "If within 10 days from the date of arrest * * *, the department receives a written request for a hearing from a person whose driving privileges * * * the department proposes to suspend under this section, the department shall provide a hearing in accordance with this section." ORS 813.410(3).

The implied-consent scheme contemplates that, under ordinary circumstances, a hearing under ORS 813.410 will be held, and a final order will issue, within 30 days of the person's arrest. ORS 813.410(4)(e) provides that, "[e]xcept as provided in ORS 813.440 or upon remand

---

[2] This requirement applies only if the person's license was valid and the person had Oregon driving privileges before the arrest. *See* ORS 813.110(4).

under ORS 813.450, *the department shall hold the hearing and issue a final order within 30 days of the date of the arrest* \* \* \*." (Emphasis added.) That 30-day period corresponds to the length of a petitioner's temporary permit and the date, the 30th day after arrest, on which the suspension of driving privileges otherwise commences under ORS 813.420; thus, under the implied-consent law, a driver typically will not lose his or her driving privileges without first receiving a hearing on the matter.

As the text of ORS 813.410(4)(e) itself explains, though, there are two exceptions to the 30-day time frame for DMV to hear and decide suspension cases: "[e]xcept as provided in ORS 813.440 or upon remand under ORS 813.450." The first of those exceptions is relevant here. ORS 813.440(1) provides:

"Notwithstanding ORS 813.410, the Department of Transportation may provide a hearing to determine the validity of a suspension under ORS 813.410 *only if the time requirements under ORS 813.410 could not be met because of any of the following*:

"(a)   The person's physical incapacity, verified by a physician to the satisfaction of the department to be of a nature that would prevent the person from making the appropriate request or attending the hearing.

"(b)   A death in the immediate family of the person, verified to the satisfaction of the department.

"(c)   An error of the department.

"(d)   *The inability of a subpoenaed police officer to appear due to the officer's illness, vacation or official duty conflicts.* The department shall set forth by rule the conditions that constitute 'official duty conflicts.' A hearing may not be rescheduled more than once for reasons described in this paragraph.

"(e)   A request for a change of administrative law judge under ORS 183.645.

"(f)   The inability of the person's attorney to appear due to the attorney's illness, vacation or scheduling conflict arising from other court or administrative hearing appearances. A hearing must be rescheduled no later than

45 days after the date of the original hearing and may not be rescheduled more than once for reasons described in this paragraph.

"(g)  Other just cause as defined by the department by administrative rule."

(Emphases added.) In other words, "only if" one of the circumstances listed above is present, can DMV provide a hearing under ORS 813.440 rather than under ORS 813.410.

If one of the listed circumstances is present and the hearing is held under ORS 813.440, the 30-day timeframe for hearing and deciding the case is inapplicable. ORS 813.440(2) provides, "A hearing held under this section is subject to the same provisions as a hearing held under ORS 813.410, *except that the department is not required to hold the hearing and make the determination within the time required by ORS 813.410.*"[3] (Emphasis added.) The statute then makes corresponding adjustments to the 30-day suspension timeline in the event that postponement beyond the 30-day period results from two circumstances beyond the driver's control: officer unavailability and DMV error. Subsection (3) of the statute provides:

"The granting of a hearing under this section shall not delay the imposition of a suspension under ORS 813.410 within the time required under ORS 813.410. *However, if a person establishes that the person was deprived by either department error or a subpoenaed police officer's illness, vacation or official duty conflicts of an opportunity to appear at a hearing, the department shall rescind the suspension and shall promptly schedule a subsequent hearing to determine the validity of the suspension under ORS 813.410.* In other cases under this section, when the department is unable to hold the hearing within the time required by ORS 813.410, the department shall rescind any suspension imposed under ORS 813.410 only if the department determines, at a hearing held under this section, that the suspension was not valid as described under ORS 813.410."

---

[3] Although there is no statutory requirement for when a hearing under ORS 813.440 must be held, there is a requirement as to how soon after the hearing DMV must issue its order. *See* ORS 813.440(4) (DMV "shall issue a final order within 10 days after the hearing described in [ORS 813.440]").

ORS 813.440(3) (emphasis added). Consequently, when a hearing is rescheduled under ORS 813.440(1)(a), (b), (e), (f), and (g), the person's driving privileges are suspended on the 30th day after arrest even though the person has not yet had an opportunity to challenge the validity of the suspension. However, if the delay is caused by "a subpoenaed police officer's illness, vacation or official duty conflicts," as in this case,[4] DMV is required to rescind the suspension pending the outcome of the hearing.

DMV has promulgated rules to implement the various implied-consent statutes, including a rule implementing the "officer unavailability" exception described in ORS 813.440(1)(d). That rule, OAR 735-090-0120, provides:

"(1)   If a subpoenaed police officer is unable to appear at a hearing under ORS 813.410 due to an officer's illness, vacation or official duty conflicts, *a hearing will be re-scheduled as soon as practicable.*

"(2)   DMV will rescind the suspension of the petitioner's driving privileges pending the outcome of the hearing conducted pursuant to ORS 813.440(1)(d).

"(3)   The DMV or OAH may receive notification of an officer's illness, vacation or official duty conflict before or after a scheduled hearing. Post hearing notification must be received by the DMV or OAH no later than 10 days after the hearing. Verification must be to the satisfaction of the DMV.

"(4)   An official duty conflict exists if the subpoenaed police officer is unable to attend the hearing due to any of the following conditions:

"(a)   Community caretaking pursuant to ORS 133.033;

"(b)   Court;

"(c)   Hazardous or impeding travel conditions;

---

[4] Technically, the first rescheduled date after Steinberg's vacation (April 8) was still within 30 days of petitioner's arrest on March 11. However, petitioner does not challenge the earlier order in which an ALJ concluded that DMV was unable to meet the timelines in ORS 813.410 (which require DMV to hold a hearing *and* issue an order) because of Steinberg's vacation. Thus, we treat the case— as the ALJ and parties did—as involving officer unavailability for purposes of ORS 813.440(1)(d), notwithstanding the fact that the first rescheduled date was within 30 days of arrest.

"(d)  Participating in employer approved training;

"(e)  Physical incapacity; or

"(f)  Service in the U.S. Armed Forces, military reserves, National Guard or the organized militia.

"(5)  Nothing in this rule prevents the taking of evidence at the time of the originally scheduled hearing and continuing the hearing for the testimony of the unavailable police witness(es)."

(Emphasis added.)

As explained above, petitioner contends (and the circuit court ruled) that the first sentence of that rule, which states that "a hearing will be re-scheduled as soon as practicable," also requires that the rescheduled hearing be *held* as soon as practicable. That interpretation, though, finds little support in the text of the rule. The ordinary meaning of the term "rescheduled" is "to schedule or plan again according to a different timetable." *Webster's Third New Int'l Dictionary* 125a (unabridged ed 2002). "Schedule," for relevant purposes, means "to appoint, assign, or designate to do or receive something at a fixed time in the future <*scheduled* a meeting for the next week>." *Webster's* at 2028. Nothing in those definitions suggests that an event cannot be "rescheduled"—*i.e.*, planned to be done according to a different timetable—more than once, or implies that the event *must* take place on the rescheduled date.

The broader context of the implied-consent scheme likewise suggests that, had DMV intended to preclude further "rescheduling" or establish a deadline for holding the rescheduled hearing, it would have said so expressly. For one thing, throughout the implied-consent scheme, both the legislature and DMV refer distinctly to "scheduling" or "rescheduling" a hearing, and to "holding" that hearing. *See, e.g.*, ORS 813.440(3) (referring to "hold[ing]" a hearing and "promptly schedul[ing] a subsequent hearing" in the event of an officer's illness, vacation, or official duty conflict); OAR 735-090-0130 ("The date of the original hearing, as used in ORS 813.440(1)(f), is the initial date that OAH scheduled a hearing to be held for a particular case, regardless

of whether a hearing actually took place on that date.").[5] And, tellingly, the legislature used the term "hold"—and not "schedule"—when it set a 30-day deadline for DMV to "hold the hearing and issue a final order" under ORS 813.410(4)(e). Under our ordinary interpretative principles, the side-by-side use of "held" and "scheduled" or "rescheduled" within related statutes and rules—let alone within single provisions of those statutes and rules—signals different meanings for those different terms. *Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426, 212 P3d 1243 (2009) ("[W]hatever the possibility for confusion or ambiguity that might exist when either word appears alone in a statute, regulation, or other directive," where the agency uses words "side by side in the same section of a document," the court's "normal interpretive principles dictate that we presume that different meanings are intended.").

Moreover, the implied-consent statutes themselves strongly imply that hearing dates under ORS 813.440 can be "rescheduled" more than once, unless otherwise provided. The very statute that the rule implements—ORS 813.440(1)(d)—provides that "[a] hearing may not be *rescheduled more than once* for reasons described in this paragraph [concerning officer unavailability]." (Emphasis added.) ORS 813.440(4)(f) likewise provides that "[a] hearing must be rescheduled no later than 45 days after the date of the original hearing *and may not be rescheduled more than once for reasons described in this paragraph*." (Emphasis added.) Thus, the express limitation on rescheduling more than once appears in some paragraphs but not others, thereby suggesting that the

---

[5] *Compare* ORS 813.410(4)(e) (describing when the department "shall *hold* the hearing and issue a final order" (emphasis added)), ORS 813.410(5)(c) (describing location where "a hearing requested under this subsection *shall be held*" (emphasis added)), and ORS 813.440(2) (a hearing "*held* under this section is subject to the same provisions as a hearing *held* under ORS 813.410, except that the department is not required to *hold* the hearing and make the determination within the time required by ORS 813.410" (emphasis added)), *with* ORS 813.440(1)(d) ("A hearing may not be *rescheduled* more than once for reasons described in this paragraph." (Emphasis added.)), and ORS 813.440(3)(f) ("A hearing must be *rescheduled* no later than 45 days after the date of the original hearing and may not be rescheduled more than once for reasons described in this paragraph." (Emphasis added.)); and *compare* OAR 735-090-0101 (describing where a hearing must be "held"), *with* OAR 735-090-0000(2)(c)(A) (referring to "scheduled" hearing date); OAR 735-090-0000(4)(a)(B) (same); *see also* OAR 735-090-0110(3) (describing failure to appear at a "scheduled hearing").

legislature knew how to impose such a limitation when that was its intent. Given the context, we have no reason to think that DMV, when implementing those same statutes, would have used the term "rescheduled" in a more restrictive way than the legislature.

As an additional contextual clue, we consider the fact that the legislature expressly exempted hearings rescheduled under ORS 813.440 from the requirement that DMV "hold the hearing and make the determination within the time required by ORS 813.410," ORS 813.440(2), and only mentioned "promptly scheduling" under two circumstances—officer unavailability and DMV error—in which the statute also mandates that DMV rescind any suspension pending the outcome of the hearing. *See* ORS 813.440(3). In that context, it seems especially unlikely that the legislature or DMV would be concerned about setting an immoveable deadline—the breach of which would benefit petitioner— for hearings rescheduled for officer unavailability. If anything, the related requirements of "promptly scheduling a subsequent hearing," ORS 813.440(2), and "re-scheduling as soon as practicable," OAR 735-090-0120(1), appear to be intended to ensure that a *petitioner* cannot delay a subsequent determination after his or her suspension has been rescinded because of officer unavailability. In that light, we have no reason to believe that DMV intended, by the use of the phrase "re-scheduled as soon as practicable," to impose a firm deadline for holding a rescheduled hearing.

For those reasons, we conclude that the ALJ correctly interpreted the rule to mean no more than it says: When an officer is unable to appear at a hearing under ORS 813.410, the hearing "will be re-scheduled as soon as practicable." *See* ORS 174.010 (court shall not "insert what has been omitted" from a statute); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993) (explaining that the same interpretative method is used for statutes and administrative rules). The rule does not independently establish a deadline for holding an implied-consent hearing in the event of officer unavailability. The trial court erred in concluding that the ALJ misinterpreted the rule.

We turn, then, to petitioner's alternative argument: that the circuit court judgment nonetheless must be affirmed because "the reason for the second reset does not appear in the record." That is, petitioner argues that an administrative order must be supported by substantial reason, *see Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996), and that "[t]his record frustrates such review, because the DMV did not offer any reason below to justify the second rescheduling."

We agree with petitioner that, given the nature of the hearing at issue, the administrative order was required to offer some explanation for the second set-over of the hearing date, which moved the hearing from April 8 to April 27. Although OAH has authority to set its own docket,[6] there are some limitations on that authority. For instance, if DMV requested that OAH reschedule "for good cause," *see* OAR 137-003-0525, DMV would have needed to establish that "an action, delay, or failure to act arises from an excusable mistake, surprise, or excusable neglect or from fraud, misrepresentation, or other misconduct of a party or agency participating in the proceeding." OAR 137-003-0501(4) (2011). We simply have no way to determine, on this record, why or at whose request the hearing was rescheduled, whether that reason was legally permissible, or even what remedy would be appropriate in the event that the reason was unlawful.

However, contrary to petitioner's argument, that deficiency in the order is not a basis on which to affirm the circuit court's judgment setting it aside. Rather, we conclude that the case instead should be remanded to DMV in the first instance so that the ALJ, on behalf of DMV, can reconsider the issue and, if necessary, take evidence concerning the reason for the second set-over and adequately explain that delay in the order.

---

[6] *See* ORS 183.341 (concerning establishment of model rules of procedure for hearings); ORS 183.630(2) (providing that "all contested case hearings conducted by administrative law judges assigned from the Office of Administrative Hearings must be conducted pursuant to the model rules of procedure prepared by the Attorney General under ORS 183.341 if the hearing is subject to the procedural requirements for contested case proceedings").

Reversed and remanded with instructions to remand to DMV for further proceedings consistent with this opinion.