318                    October 3, 2013                    No. 49

IN THE SUPREME COURT OF THE
STATE OF OREGON

Knute BUEHLER
and Duane Ray Fletchall,
*Petitioners*,

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent*.

(S061408)

En Banc

On petition to review ballot title filed June 18, 2013; considered and under advisement August 6, 2013.

Kevin L. Mannix, Kevin L. Mannix PC, Salem, filed the petition and reply memorandum for petitioners.

Laura S. Anderson, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Daniel W. Meek, Portland, filed an *amicus* brief in support of Certified Ballot Title for Initiative Petition 11 (2014).

Margaret S. Olney, Portland, filed an *amicus* brief in support of Certified Ballot Title for Initiative Petition 11 (2014) on behalf of Gail Rasmussen, BethAnne Dabry and Patrick Green.

BREWER, J.

Ballot title referred to the Attorney General for modification.

**BREWER, J.**

Two petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 11 (2014). *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot titles). We also have received briefs from *amici curiae* Rasmussen, Darby, and Green in support of the certified ballot title, and *amicus* Meek in opposition to it. Among them, petitioners and Meek advance a host of arguments asserting various inadequacies of the ballot title. We review the ballot title to determine whether it substantially complies with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 11, if approved by the voters, would enact the "Our Oregon Signatures Count Act." In general, the proposed ballot measure would give registered voters "who ha[ve] committed no violation of law" a statutory right—enforceable in the courts—to have their signatures counted on a petition for an initiative, a referendum, a candidate nomination, formation of a political party, or a recall. In carrying out that objective, the measure includes provisions related to signature gathering, voter registration, and ballot titles for such petitions. Initiative Petition 11 provides, in part:

> "Section 3.   Laws and regulations may be enacted and enforced to prevent forgery or fraud, and to maintain an orderly process in the circulation of a petition. However, such laws and regulations shall not be enforced in any manner so as to prevent the petition signature of a registered voter, who has committed no violation of law, from being included in the determination whether the petition contains the required number of signatures of voters.

> "Section 4.   Notwithstanding ORS 250.042, the Secretary of State and elections officers may not disqualify a signature on a petition based on the failure of a circulator to comply with a law governing the circulation of petitions unless the secretary or elections officer determines that the circulator's failure was the result of a knowing and willful violation of law.

> "* * * * *

"Section 10.    Except as required by the constitution of this state, laws governing ballot titles for petitions and ballot measures do not apply to petitions and ballot measures by citizen initiative that contain 100 words or fewer of text (excluding the enacting or amendatory clause).

"Section 11.    Any ballot measure by citizen initiative that contains 100 words or fewer of text (excluding the enacting or amendatory clause) shall have the full text of the measure presented on the ballot immediately after the measure number and the enacting or amendatory clause. The full text of the proposed measure shall be printed on any petition sheet instead of any ballot title.

"Section 12.    If a registered voter signs a petition, and the voter is deemed to be an inactive registered voter, the act of placing his or her signature on a petition shall constitute the immediate re-activation of the voter's registration at the address indicated by the voter on the petition, and the voter's signature shall be counted on that petition.

"Section 13.    On the date a voter registration form is signed by an otherwise eligible person, the person's signature shall be deemed active and registered for the purpose of signing any petition.

"* * * * *

"Section 16.    This 2014 Act supersedes any Oregon law which is inconsistent with this Act."

The Attorney General certified the following ballot title for the proposed measure:

"**BALLOT TITLE:**    Changes, repeals laws governing petition signatures, ballot titles, qualified voters; authorizes lawsuits challenging disqualified signatures

"**Result of 'Yes' Vote:**    'Yes' vote changes, repeals laws governing petition signature qualification, verification, counting; public notice required if voter's signature rejected; requires printing entire text of short measures.

"**Result of 'No' Vote:**    'No' vote retains existing laws allowing disqualification of signatures unlawfully obtained, not matching voter records, signed by inactive/unregistered voter; all measures receive ballot titles.

"**Summary:**    Currently, only 'qualified voters' may sign initiative/referendum, candidate nomination, political party

formation, recall petitions; 'qualified voters' are electors with active registration at time of signing. Constitution, statutes, rules regulate signature collection, verification, and counting to prevent fraud, forgery, improper signature gathering. Measure prohibits laws disqualifying voter's valid signature even if gatherer/circulator obtains it illegally; reactivates 'inactive' voter registration for all purposes automatically upon signing petition, counts signature. Requires public electronic posting of voter name if signature disqualified; signature counts if voter validates. Authorizes lawsuit to contest signature disqualification, attorney fees to voter/chief petitioner. Eliminates ballot title for initiatives of 100 words or less, full text must be printed on petition, ballot. Other provisions."

Petitioners first assert that the caption and the "yes" vote result statement do not substantially comply with ORS 250.035(2) because they state that the subject matter and effect of the measure would be to "repeal" laws governing the specified matters, whereas, in petitioners' view, the measure does not involve that subject matter nor would it have that effect. Petitioners acknowledge that Initiative Petition 11 would effectively change several existing laws and that it would "modify the enforcement of laws to allow an innocent petition signer, who is a voter, to have his or her signature counted." However, petitioners assert, "the enforcement of restrictions, as to actions by others, can continue: imposition of fines, criminal penalties, *etc*." Relatedly, *amicus* Meek asserts that, even if the proposed ballot measure would repeal *some* existing laws governing those matters, the caption and the "yes" vote result statement incorrectly imply that the measure would repeal *all* such laws. According to Meek, without a limiting word such as "some" in the phrase "repeals laws," the caption and "yes" vote result statement are misleading and vague.

The Attorney General replies that, even though the measure would not expressly repeal inconsistent provisions of existing laws, it would do so by implication. Thus, the Attorney General reasons, the ballot title substantially complies with ORS 250.035(2)(a).

We review challenges to ballot measure captions for substantial compliance with ORS 250.035(2)(a), which requires

a "caption of not more than 15 words that reasonably identifies the subject matter of the state measure." The "subject matter" of a measure refers to "the 'actual major effect' of a measure or, if the measure has more than one major effect, all such effects (to the limit of the available words)." *Whitsett v. Kroger*, 348 Or 243, 247, 230 P3d 545 (2010). To identify the "actual major effect" of a measure, this court looks to "the text of the proposed measure to determine the changes that the proposed measure would enact in the context of existing law" and then evaluates whether the caption reasonably identifies those effects. *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011). In fulfilling the statutory requirements, the caption must identify the measure's subject matter in terms that will not "confuse or mislead potential petition signers and voters," *Mabon v. Myers*, 332 Or 633, 637, 33 P3d 988 (2001), and it cannot overstate or understate the scope of the legal changes that the measure would enact. *Kain/Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004).

Similarly, we review challenges to the "yes" vote result statement for substantial compliance with ORS 250.035(2)(b), which requires a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." As this court has stated, the "yes" vote result statement must set out "the most significant and immediate consequences" of adoption of the proposed measure. *Pelikan/Tauman v. Myers*, 342 Or 383, 390, 153 P3d 117 (2007).

To evaluate the major effects and significant consequences of Initiative Petition 11, it is helpful to review the existing laws governing signature gathering, voter registration, and ballot titles for initiative petitions, and then compare them with the provisions of Initiative Petition 11.

Currently, petition signature sheets that do not meet statutory and regulatory requirements are not included in determining whether a petition or prospective petition contains the required number of signatures of electors. For example, ORS 250.042 provides that, if a signature sheet is not certified by the petition circulator as required by law, the signatures contained on the signature sheet "may not be counted for purposes of determining whether the petition

contains the required number of signatures of electors." In addition, ORS 250.048(7) provides that the Secretary of State may not include any signatures in the count if a paid circulator was not registered. Regulations promulgated to implement those statutes provide that signature sheets of paid circulators who are unable to show proof of registration will not be accepted, OAR 164-014-0280(5)(c), and signatures may not be counted if they do not match voter registration records, OAR 165-014-0030(5) - (16).

Under sections 3 and 4 of Initiative Petition 11, however, otherwise valid voter signatures may not be disqualified because of signature gathering irregularities such as those described in ORS 250.042 and ORS 250.048. As noted, sections 3 and 4 of Initiative Petition 11 provide:

> "Section 3.   Laws and regulations may be enacted and enforced to prevent forgery or fraud ***. However, such laws and regulations shall not be enforced in any manner so as to prevent the petition signature of a registered voter, who has committed no violation of law, from being included in the determination whether the petition contains the required number of signatures of voters.

> "Section 4.   Notwithstanding ORS 250.042, the Secretary of State and elections officers may not disqualify a signature on a petition based on the failure of a circulator to comply with a law governing the circulation of petitions unless the secretary or elections officer determines that the circulator's failure was the result of a knowing and willful violation of law."

Existing statutes also establish procedures governing initial voter registration and reactivation of registration. For example, ORS 247.012 provides that a voter registration is "active" on the date that a registration card is received and accepted under that statute. Section 13 of Initiative Petition 11 would change that existing law by providing that a person's signature is deemed "active" for purposes of signing a petition on the date that the voter registration form is signed. As another example, under existing law, an elector for whom a county clerk has evidence of a change in required voter registration information and who has not voted or updated that information within five years may be deemed inactive, and the elector's registration may be

cancelled, unless the elector updates the registration. *See* ORS 247.013; ORS 247.563 (so providing). By contrast, section 12 of Initiative Petition 11 provides that an inactive registered voter's signature on a petition "immediately" re-activates the voter's registration and that "the voter's signature shall be counted on that petition."

Finally, under current law, the Attorney General is required to provide a ballot title for all state measures received from the Secretary of State. ORS 250.065(3). However, section 11 of Initiative Petition 11 provides that "[a]ny ballot measure by citizen initiative that contains 100 words or fewer of text *** shall have the full text of the measure presented on the ballot *** instead of any ballot title."

As discussed above, the Attorney General's ballot title characterizes the changes that Initiative Petition 11 makes to existing law as the "repeal" of those laws. The Attorney General argues that that word fairly describes the "actual major effect" of the measure, insofar as Initiative Petition 11 at least impliedly repeals many existing laws. For that reason, the Attorney General maintains, the caption and the "yes" vote result statement substantially comply with ORS 250.035(2)(a) and (b).

At the outset, we observe that nothing in Initiative Petition 11 expressly repeals any existing law. However, when a subsequent statute is "repugnant to or in conflict with a prior statute *** the prior statute is impliedly repealed." *State v. Shumway*, 291 Or 153, 160, 630 P2d 796 (1981). In such a case, "the earlier must yield to the later by implied repeal." *Anthony v. Veatch*, 189 Or 462, 481, 220 P2d 493 (1950). This court will not presume an intent to repeal. *Shumway*, 291 Or at 162. Rather, the court infers repeal of a prior statute only when there is "plain, unavoidable, and irreconcilable" conflict between the new and the old statute. *Id*. (quoting *Messick v. Duby*, 86 Or 366, 371, 168 P 628 (1917)). That is, "[t]he repeal by implication of one act by a later act is not effected by mere conflicts or inconsistencies between them, but only where the carrying out of the later act prevents the enforcement of any part of the former." *State v. Buck*, 200 Or 87, 148-49, 262 P2d 495 (1953) (internal citation omitted).

On the other hand, if the effect of the subsequent act is not to entirely abrogate an earlier statute but, rather, to make it partially inoperative in certain situations, then this court has been inclined to view the subsequent statute as impliedly amending, rather than repealing, the earlier statute. *Lilly v. Gladden*, 220 Or 84, 94, 348 P2d 1 (1959) (so holding). In *Balzer Mch v. Klineline Sand & Grav.*, 271 Or 596, 601, 533 P2d 321 (1975), for example, the court found an implied amendment where the statute at issue partially conflicted with an earlier statute on the same subject. The court held that the "two statutes are inconsistent and, therefore, the later will prevail." *Id. See also State v. Scott*, 237 Or 390, 397, 390 P2d 328 (1964) (concluding that, to the extent of inconsistency, subsequently enacted statute impliedly amended prior statute).

In this case, none of the provisions of Initiative Petition 11 entirely abrogates an existing statute. Section 3, for example, provides that existing "laws and regulations shall not be enforced in any manner so as to prevent the petition signature of a registered voter, who has committed no violation of law, from being included in the determination whether the petition contains the required number of signatures of voters." That provision does not repeal an existing law; rather, it limits the enforcement of certain statutes described above in some situations. Similarly, section 4, which provides that, "notwithstanding ORS 250.042," signature gathering irregularities do not result in disqualification of signatures on a petition unless the irregularity "was the result of a knowing and willful violation of law," does not completely abrogate ORS 250.042, which disqualifies all signatures on a petition sheet if the signature gatherer does not certify them in compliance withapplicable laws. Finally, sections 12 and 13 do not completely supersede the statutes that establish procedures for initial voter registration and reactivation of registration; rather, the measure would create exceptions to those provisions when an inactive registered voter or a person whose registration application has not yet been accepted by the appropriate state official signs a qualifying petition.

In addition, section 11, which requires the full text (not a ballot title) of a proposed ballot measure containing "100 words or fewer of text" to be "presented on the ballot," does not completely supersede ORS 250.065(3). The latter statute requires the Attorney General to provide a ballot title for all proposed measures; should Initiative Petition 11 pass, the statute would remain in effect with respect to measures containing more than 100 words of text.

It follows that the Attorney General's use of the word "repeals" in the caption and "yes" vote result statement of the ballot title is legally incorrect and potentially misleading. Because the caption and "yes" vote result statement do not substantially comply with ORS 250.035(2)(a) and (b) in the respect that we have identified, we must refer the ballot title to the attorney general for modification.[1]

Petitioners also challenge the summary of the ballot title of Initiative Petition 11 under ORS 250.035(2)(d). That statute requires "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." The function of the summary is "to provide voters with enough information to understand what will happen if the measure is approved." *Caruthers v. Kroger*, 347 Or 660, 670, 227 P3d 723 (2010). That information may include a description of the effect of the measure at issue on other laws, so long as the description is accurate. *Berman v. Kroger*, 347 Or 509, 514, 225 P3d 32 (2009).

Petitioners object to the following sentence in the Attorney General's summary for Initiative Petition 11:

"Measure prohibits laws disqualifying voter's valid signature even if gatherer/circulator obtains it illegally[.]"

They argue that Initiative Petition 11 would not "prohibit" laws. Rather, section 3 of Initiative Petition 11 provides that laws dealing with forgery, fraud, and orderly process in the circulation of a petition "shall not be enforced in any manner

---

[1] Because we have concluded that Initiative Petition 11 does not "repeal" existing law, we need not address amicus Meek's argument that the caption and the "yes" vote result statement are misleading and vague because of the absence of a limiting word such as "some" in the phrase "repeals laws."

so as to prevent the signature of a registered voter, who has committed no violation of law, from being included in the determination whether the petition contains the required number of signatures of voters." That is, although the *enforcement* of such laws would be restricted by the measure, such laws would not be *prohibited*. We agree. In that respect, the summary does not accurately summarize a major effect of the measure. It follows that the summary does not substantially comply with ORS 250.035(2)(d).[2]

The ballot title is referred to the Attorney General for modification.

---

[2] We reject without discussion the other challenges to the ballot title that petitioner and *amicus* Meek have made.