Submitted August 8, affirmed September 13, 2023, petition for review denied January 12, 2024 (371 Or 825)

KENNETH PEELER, JR.,
*Petitioner-Appellant,*

*v.*

Erin REYES,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
20CV27802; A178342

537 P3d 206

Petitioner appeals from a judgment denying his petition for post-conviction relief. He argues that his guilty plea to kidnapping, rape, and sodomy charges was not knowing because the federal law regarding unanimous jury verdicts changed after he pled guilty. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (the Sixth Amendment requires jury unanimity in both state and federal criminal trials); see also *Watkins v. Ackley*, 370 Or 604, 523 P3d 86 (2022) (Ramos applies retroactively in state post-conviction proceedings). At a pretrial hearing in the underlying case, the trial court discussed with petitioner the potential prison time that he could face if he were convicted on all charges by a jury and that, consistent with existing law at the time, he could be convicted if 10 of the 12 jurors found him guilty. Petitioner accepted a plea offer from the state, waiving his right to a jury trial. *Held*: Because the trial court correctly advised petitioner about his Sixth Amendment jury trial right as it was understood when he pled guilty, his waiver of his Sixth Amendment right was knowing and therefore valid. Petitioner's conviction was not based on a nonunanimous jury verdict, as it was in Watkins, but on a guilty plea. The question whether his waiver of a federal right was knowing is a federal question controlled by federal law. *Brady v. United States*, 397 US 742, 90 S Ct 1463, 25 L Ed 2d 747 (1970), makes clear that the validity of petitioner's waiver of his jury trial right is measured at the time he pled guilty.

Affirmed.

J. Burdette Pratt, Senior Judge.

Margaret Huntington and O'Connor Weber LLC filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, and Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

In 2007, petitioner pled guilty to kidnapping, rape, and sodomy. In 2021, he sought post-conviction relief. He claimed, among other things, that his plea had not been knowingly made because the law regarding unanimous jury verdicts changed after he pled guilty. The post-conviction court entered a judgment denying petitioner's claims. We affirm.

In setting out the facts, we put the facts in context by describing the various legal rules regarding petitioner's state and federal constitutional rights to a jury trial that preceded and followed his guilty plea. As originally adopted, Article I, section 11, of the Oregon Constitution guaranteed the right to an impartial jury in criminal trials but did not specify whether the jury's verdict had to be unanimous. *See State v. Pipkin*, 354 Or 513, 526, 316 P3d 255 (2013) (discussing the history of Article I, section 11). In 1934, Oregon voters approved a legislatively referred amendment to Article I, section 11, that for the first time expressly addressed jury unanimity. *Id.* The amendment provided that, in state criminal cases, "'ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict.'" *See id.* (quoting Article I, section 11, as amended).

In 1972, the United States Supreme Court considered whether Oregon's constitutional provision authorizing nonunanimous juries was consistent with a defendant's Sixth Amendment right to a jury trial. *See Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972). A majority of the Court held that it was. *See id.* at 410 (plurality opinion) (reasoning that unanimity is not an essential feature of the Sixth Amendment); *Johnson v. Louisiana*, 406 US 356, 374-75, 92 S Ct 1620, 32 L Ed 2d 152 (1972) *(*Powell, J., concurring in the judgment in *Apodaca)* (reasoning that, although the Sixth Amendment requires jury unanimity in federal criminal trials, the unanimity requirement is not such an essential feature of the right that it is incorporated against the states).

In 2007, the state charged petitioner with four felonies: two counts of first-degree kidnapping, one count of

first-degree rape, and one count of first-degree sodomy. During a pretrial hearing, the trial court discussed with petitioner the potential prison time that he could face if he were convicted on all four charges. After that hearing, the state made a plea offer to petitioner to dismiss one of the charges, which reduced the mandatory minimum prison sentence petitioner faced. The state also agreed to recommend a 300-month sentence. That recommendation, if accepted, would allow petitioner to avoid the possibility of upward departure sentences and the like. *See State v. Speedis*, 350 Or 424, 427-28, 256 P3d 1061 (2011) (discussing departure sentences).

After consulting with his trial counsel, petitioner decided to accept the state's offer. He signed a plea petition that stated that "I understand that by pleading guilty *** I am waiving my righ[t] to *** a speedy and public trial by jury."[1] (Some capitalization omitted.) The plea petition did not list the specific attributes of the jury trial right that petitioner was waiving. However, when petitioner pled guilty in 2007, *Apodaca* was the last word on the scope of a criminal defendant's Sixth Amendment jury trial right. And petitioner submitted a declaration in support of his post-conviction petition in which he stated that, consistently with *Apodaca*, the trial court and his counsel had told him that, if he chose to go to trial, he could be convicted if 10 of the 12 jurors found him guilty.[2]

Before accepting petitioner's guilty plea, the trial court engaged in a colloquy with petitioner to ensure that he had read the plea petition, discussed it with his counsel, and understood it. The court then accepted petitioner's guilty

[1] The plea petition also described other constitutional rights that petitioner was waiving by pleading guilty.

[2] The only evidence in the record that petitioner understood when he pled guilty that he could be convicted by a nonunanimous jury comes from petitioner's post-conviction declaration. In ruling on petitioner's claims, the post-conviction court "f[ou]nd petitioner's testimony [in his declaration] to be not credible." However, in explaining why it disagreed with petitioner's claim that he had not knowingly waived his right to a jury, the post-conviction court started from the proposition that, when petitioner pled guilty in 2007, he "believed that he could be convicted by a 10-2 guilty verdict." The court thus appears to have accepted or at least assumed the truth of one statement in petitioner's declaration. We follow the same course.

plea to one count each of kidnapping, rape, and sodomy and imposed the recommended 300-month sentence. Based on petitioner's plea, the trial court entered a judgment of conviction, which petitioner appealed. That appeal was resolved in 2008, and petitioner's conviction became final that year. Petitioner filed his first petition for post-conviction relief in 2009, which was denied in 2010.

Thirteen years after petitioner pled guilty and 12 years after his conviction became final, the Court overruled *Apodaca*. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). It held that the Sixth Amendment requires jury unanimity in both state and federal criminal trials. *Id.* As a matter of federal law, *Ramos* announced a "new constitutional rule" that applied to all cases then pending on direct appeal. *See Teague v. Lane*, 489 US 288, 299, 301, 109 S Ct 1060, 103 L Ed 2d 334 (1989) (plurality) (describing which rulings constitute "new constitutional rules"); *Griffith v. Kentucky*, 479 US 314, 328, 107 S Ct 708, 93 L Ed 2d 649 (1987) (holding that new constitutional rules apply to all cases pending on direct appeal when the new rule is announced). The Court later held that the new constitutional rule it announced in *Ramos* does not apply retroactively in federal proceedings to convictions that became final before *Ramos* was decided. *Edwards v. Vannoy*, ___ US ___, 141 S Ct 1547, 209 L Ed 2d 651 (2021).

The Court's holding in *Edwards*—that *Ramos* does not apply retroactively in the federal courts—does not preclude states from applying *Ramos* retroactively in state court proceedings. *See Danforth v. Minnesota*, 552 US 264, 271-82, 128 S Ct 1029, 169 L Ed 2d 859 (2008); *Watkins v. Ackley*, 370 Or 604, 607 n 2, 612, 523 P3d 86 (2022) (describing *Danforth*'s reasoning). Following the reasoning in *Danforth*, the Oregon Supreme Court held in 2022 that the Sixth Amendment right to a unanimous verdict announced in *Ramos* applies retroactively in state post-conviction proceedings to convictions that became final before *Ramos* was decided. *Watkins*, 370 Or at 633.

The final convictions challenged in *Watkins* and the two companion cases decided the same day were all based on nonunanimous jury verdicts. *See Watkins*, 370 Or at 606;

*Huggett v. Kelly*, 370 Or 645, 647, 523 P3d 84 (2022); *Jones v. Brown*, 370 Or 649, 651, 523 P3d 82 (2022). And, once the court concluded that *Ramos* applied retroactively, it necessarily followed that the challenged convictions in those cases violated the Sixth Amendment, as interpreted in *Ramos*, unless some procedural bar prevented the petitioners from asserting their Sixth Amendment claims. *See Watkins*, 370 Or at 633.

The issue in this case differs from the issue in *Watkins*, *Huggett*, and *Jones*. In this case, petitioner's conviction is not based on a nonunanimous jury verdict. Rather, his conviction is based on a guilty plea. And the question this case poses is whether that difference matters. Petitioner argues that, because *Ramos* applies retroactively, his plea was not "knowing." Specifically, petitioner contends that he was unaware when he pled guilty in 2007 that, as *Ramos* later held, the Sixth Amendment requires a unanimous jury verdict in state criminal cases. The superintendent responds that, as a matter of federal law, the question whether a defendant knowingly waived a federal constitutional right is measured at the point in time that he or she pled guilty. A later change in the law will not invalidate an otherwise valid guilty plea unless, of course, the defendant's counsel was constitutionally inadequate for failing to foresee the change.[3]

In resolving the parties' dispute, we note, as an initial matter, that "[t]he question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Brookhart v. Janis*, 384 US 1, 4, 86 S Ct 1245, 16 L Ed 2d 314 (1966). That is, we look to federal law in deciding whether petitioner's waiver of his Sixth Amendment right to a jury trial in 2007 was

---

[3] The superintendent also relies on a line of authority holding that a plea will be knowing if a defendant is generally aware that he or she is waiving the right to have a jury decide the case; the defendant need not know the specifics of the right, such as whether the verdict must be unanimous, for the plea to be knowing. Whatever its merits, that line of authority does not apply here. Although the plea petition referred generically to waiving the right to a trial by jury, the trial court and petitioner's counsel told him that the verdict need not be unanimous. In those circumstances, the only applicable argument that the superintendent advances is the one set out above.

"knowing" and thus valid.[4] In our view, the Court's decision in *Brady v. United States*, 397 US 742, 90 S Ct 1463, 25 L Ed 2d 747 (1970), provides a complete answer to that question. We accordingly discuss *Brady* in greater detail than usual before explaining how that decision applies here.

The petitioner in *Brady* pled guilty in 1959 to kidnapping in violation of 18 USC section 1201(a). 397 US at 743. When the petitioner pled guilty, section 1201(a) provided that a defendant convicted of that crime was subject to the death penalty if the jury recommended it. *Id.* However, section 1201(a) did not provide for the death penalty if a defendant was convicted of kidnapping after either a bench trial or pleading guilty. *See United States v. Jackson*, 390 US 570, 581, 88 S Ct 1209, 20 L Ed 2d 138 (1968) (interpreting section 1201(a)). Section 1201(a), as interpreted by the Court in *Jackson*, made the price of exercising the Sixth Amendment right to a jury trial the risk that the jury would recommend the death penalty—a risk that was not present if the defendant agreed to a bench trial or pled guilty. *See id.* Accordingly, the Court held that "[w]hatever the power of Congress to impose the death penalty for violation of the Federal Kidnapping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right." *Id.* at 583. As a result, the Court severed the death penalty clause in section 1201(a) from the remainder of the statute. *Id.* at 591.

At roughly the same time that the Court was deciding *Jackson* in 1968, the petitioner in *Brady* filed a petition under 28 USC section 2255, which provides for collateral relief from federal criminal convictions. *See Brady*, 397 US at 744-45. Brady argued, among other things, that his 1959 plea was not voluntary because, at that time, section 1201(a) unconstitutionally coerced defendants to forgo a jury trial and plead guilty. He also argued that his plea was not intelligently made because he was unaware when he pled guilty that nine years later the Court would hold that a defendant charged with violating section 1201(a) could exercise his or her Sixth Amendment right to a jury trial without facing

---

[4] Petitioner does not claim that his plea was not voluntary or intelligent. Rather, he claims only that his plea was not knowing.

the death penalty. In considering Brady's petition, the Court started from the proposition that its decision in *Jackson* applied to Brady's challenge to his 1959 guilty plea without discussing retroactivity. *See id.* at 746-48.[5]

On the first issue that Brady raised, the Court explained that *Jackson* did not rule "that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas." *Id.* at 747. And it noted that the federal district court had correctly found that Brady's guilty plea was primarily motivated by considerations other than the risk of a death sentence if he exercised his right to a jury trial. *Id.* at 747-49.

On the second issue, the Court noted that "[i]t is true that Brady's counsel advised him that § 1201(a) empowered the jury to impose the death penalty" and that nine years later the Court held in *Jackson* that a defendant could exercise his or her Sixth Amendment right to a jury trial without risking the possibility of a death sentence. *Id.* at 756. The Court found, however, that the later change in the law did not invalidate Brady's plea. The Court reasoned:

> "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not

---

[5] In *Brady*, the Court applied its decision in *Jackson* to a conviction that became final several years earlier without discussing retroactivity. *See Brady*, 397 US at 746-48. *Brady* may have viewed *Jackson* as merely applying settled federal principles to a new factual situation, which would not trigger federal retroactivity analysis. *See id.* at 747 (stating that *Jackson* "neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by the courts"); *Chavez v. State of Oregon*, 364 Or 654, 664-65, 438 P3d 381 (2019) (explaining that, under federal law, a decision that does not announce a new rule but merely applies settled principles to new factual situations will apply to final convictions without any need to engage in a retroactivity analysis).

entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, \*\*\*, a voluntary plea of guilty intelligently made in the light of then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, held that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered."

*Id.* at 756-57 (citation omitted).

We have quoted the Court's reasoning in *Brady* at length because three propositions it noted are relevant here. First, a guilty plea reflects a complex decision to admit committing the charged offenses in open court—a decision that can reflect such variables as the strength of the state's case, the related likelihood that the defendant may not prevail at trial, and the prospect of a reduced sentence if the defendant admits his or her guilt. Second, given the complexity of that decision, the relevant question is whether the defendant was aware of the law as it existed at the time that he or she made the decision to plead guilty. The third proposition is related to the second: Later changes in the law, such as removing the possibility of the death sentence if a defendant exercised his or her Sixth Amendment right to a jury trial, will not invalidate an earlier plea. Rather, the question is whether the defendant made an informed decision based on the law as it was understood at that time.

In this case, it is undisputed that the trial court accurately advised petitioner about his Sixth Amendment rights as they were understood when he pled guilty in 2007. Indeed, the trial court would have misrepresented the law, as it was then understood, if the court had told petitioner that only a unanimous jury could find him guilty if

he elected to go to trial in 2007. To be sure, we now know that *Ramos* requires jury unanimity in state criminal proceedings and that *Ramos* applies retroactively in Oregon. However, *Brady* makes clear that petitioner's guilty plea—specifically, his waiver of his Sixth Amendment right to a jury trial—was knowing and intelligent because he was correctly informed about the scope of that Sixth Amendment right, as the United States Supreme Court then interpreted it, when he entered his plea in 2007.

One other point remains. Petitioner argues that constitutionally adequate counsel would have foreseen in 2007 that *Apodaca* could be overruled in the future and advised him of that possibility before he pled guilty. That argument faces multiple hurdles. Among them is our holding in *Smith v. Kelly*, 318 Or App 567, 569, 508 P3d 77 (2022), *rev den*, 370 Or 822 (2023), that counsel was not constitutionally deficient for failing to advise his client in 2015 that *Apodaca* could be overruled. That holding applies with even greater force to the adequacy of counsel's advice in 2007.

Affirmed.