Submitted August 8, reversed and remanded September 13, 2023

JAMES MARTIN,
*Petitioner-Appellant,*

*v.*

Brandon KELLY,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
19CV05714; A177158

537 P3d 200

Petitioner appeals a judgment denying his claims for post-conviction relief. The primary question he raises on appeal is whether his trial counsel was constitutionally inadequate for failing to file a motion to suppress evidence found in petitioner's codefendant's vehicle, which was parked and unoccupied when police confronted them in a parking lot, based on counsel's understanding that petitioner did not have a privacy interest in that vehicle. Petitioner further argues that he was prejudiced by his counsel's inadequate assistance because no exception to the warrant requirement, including the then-applicable automobile exception, applied, the motion to suppress would have succeeded, and, if the motion was granted, he would not have pled no contest. *Held*: Counsel's failure to file a suppression motion fell below the minimum level of assistance that the state and federal constitutions require. Furthermore, petitioner was prejudiced by his counsel's failure; specifically, the Court of Appeals disagreed with the post-conviction court's conclusion that a motion to suppress would have failed because the automobile exception permitted the officers' search. The court remanded the case to the post-conviction court so that it could find, in the first instance, whether petitioner would have pled no contest if his counsel had moved to suppress the evidence found in the codefendant's car.

Reversed and remanded.

Claudia M. Burton, Judge.

Jedediah Peterson and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, filed the brief for respondent.

Before Lagesen, Chief Judge, and Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded.

**KISTLER, S. J.**

Petitioner appeals a judgment denying his claims for post-conviction relief. The primary question he raises on appeal is whether his trial counsel was constitutionally inadequate for failing to file a motion to suppress.[1] As explained below, we conclude that counsel's failure to file a suppression motion fell below the minimum level of assistance that the state and federal constitutions require. We also conclude that petitioner was prejudiced by his counsel's failure; specifically, we disagree with the post-conviction court's conclusion that a motion to suppress would have failed because the automobile exception permitted the officers' search. We accordingly reverse the post-conviction court's judgment and remand for further proceedings.

We state the facts consistently with the post-conviction court's findings. Using a false name, petitioner tried to cash a check at the drive-through window of a credit union. During that transaction, the credit union staff initially became suspicious and later convinced that the check was forged. While the staff were investigating, petitioner and his codefendant drove away. The credit union's camera captured a picture of the car's license plate.

The credit union staff reported the incident to the local police department, which determined that the owner of the car (the codefendant) had outstanding felony warrants for her arrest and that the person whose name petitioner had used at the bank also had outstanding felony warrants. Later, police officers found the codefendant's car parked outside a restaurant. The officers waited for approximately 15

---

[1] Petitioner also challenges the post-conviction court's resolution of two of his other claims for relief. First, he argues on appeal that his trial counsel was constitutionally inadequate for failing to foresee that the United States Supreme Court would hold, at some point in the future, that the Sixth Amendment requires unanimous jury verdicts in state criminal proceedings and for failing to advise him of that possibility. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that the Sixth Amendment requires unanimous jury verdicts in state criminal trials). Our decision in *Smith v. Kelly*, 318 Or App 567, 508 P3d 77 (2022), *rev den*, 370 Or 822 (2023), answers his inadequate assistance claim. Second, he contends that his guilty plea in this case was not knowing because he understood when he pled guilty that he could be convicted by a nonunanimous jury. Our decision in *Peeler v. Reyes*, 328 Or App 110, 537 P3d 206 (2023), decided this date, answers that claim.

to 20 minutes until petitioner and the codefendant came out of the restaurant and began heading for the car. By that point, the officers had "surrounded" the car, and they stopped petitioner and the codefendant "[r]ight at the front of the car. Right on the sidewalk."

An extended conversation followed. Petitioner initially gave the officers a different false name from the one that he had used at the credit union. Later during the conversation, he defaulted to the false name he used at the credit union. After the officers found "several credit cards and a check" that constituted "identity theft evidence" in petitioner's wallet, petitioner told the officers that he had purchased identification documents and stolen checks from an unnamed person.

The officers opened a purse and wallet that belonged to the codefendant, where they found similar identification documents. The codefendant said that she also had purchased the documents from an unnamed person. The officers pressed the codefendant for consent to search her car, which the officers testified she gave them. In the car, the officers found what the post-conviction court described as a "veritable bonanza of fraudulent identity documents."

Relying on the evidence found in the codefendant's car, the grand jury issued an amended indictment charging petitioner with four counts of aggravated identity theft, each of which was based on 10 or more separate violations of identity theft within a 180-day period. *See* ORS 165.803(1) (defining aggravated identity theft).[2] The amended indictment also charged petitioner with one count of identity theft and one count of second-degree forgery.

Petitioner's counsel did not move to suppress the evidence found in the codefendant's car. When asked in the post-conviction proceeding what his "thought process" had been in deciding not to file a suppression motion, petitioner's counsel explained that both petitioner and the codefendant

---

[2] All told, the grand jury charged petitioner with possessing the personal identification documents of 44 separate people. Although the officers found some identification documents on petitioner, there appears to be no dispute that the grand jury could not have charged petitioner with aggravated identity theft without the identification documents discovered in the codefendant's car.

were outside her car when the police officers contacted them, "and [he] didn't believe that [petitioner] had a protected privacy interest in the vehicle." Later, petitioner's counsel testified that he could not remember whether he had spoken with the codefendant's attorney before he advised petitioner to plead no contest. Finally, when asked during the post-conviction proceeding if he could "clarify for the record why [he] did not attempt to suppress the evidence in [p]etitioner's case," petitioner's counsel explained: "I did not believe [petitioner] had a protected privacy interest [in the car], so I thought it would be an unproductive motion."[3]

Approximately five weeks after the grand jury first charged petitioner in April 2018 and less than a month after it issued the amended indictment adding four counts of aggravated identity theft, petitioner pled no contest to two counts of aggravated identity theft. The trial court found him guilty on both counts and sentenced him, as the state had recommended, to two concurrent 60-month sentences. Each 60-month sentence reflected an upward departure from the presumptive 30-month sentence that petitioner faced for aggravated identity theft.

Approximately two and one-half months after petitioner pled no contest, the codefendant moved to suppress the evidence found in her purse, wallet, and car. The trial court's analysis of the codefendant's suppression motion is relatively complex. The bottom line, however, is that the court ruled that the officers lawfully searched the codefendant's purse and wallet as a search incident to arrest. It reached a different conclusion regarding the search of her car. It ruled that she had not validly consented to that search. Without a search warrant or an identified exception to the warrant requirement, the trial court ruled that the warrantless search of the codefendant's car violated the Oregon Constitution and suppressed the evidence the officers found there.

_____

[3] Later in his deposition, petitioner's counsel was asked if he thought that filing a motion to suppress would have affected plea negotiations. He answered that he thought that "generally" it would, and he predicted that he would have gotten a "less good" plea offer if he had moved to suppress. Counsel did not explain whether his prediction about a "less good" plea offer assumed that a motion to suppress would have been "unproductive."

Petitioner filed a timely post-conviction petition claiming, among other grounds, that his trial counsel had been constitutionally inadequate for failing to move to suppress the evidence discovered during his stop and later arrest. The post-conviction court found that the officers properly had searched petitioner's wallet and person as a search incident to arrest, and the dispute before the post-conviction court centered on whether petitioner's trial counsel was constitutionally inadequate for not seeking to suppress the evidence discovered in the codefendant's car.

On that issue, the post-conviction court found that petitioner's "[t]rial counsel did not file a motion to suppress because he thought that petitioner did not have a protected privacy interest in the [codefendant's] car." The post-conviction court concluded that counsel's reason for not filing a suppression motion was wrong. As the post-conviction court observed, the Oregon Supreme Court had held more than 40 years earlier that a person who entrusts his or her property to another has a protected privacy interest in the other person's house or, in this case, car. *See State v. Tanner*, 304 Or 312, 314-20, 745 P2d 757 (1987) (interpreting Article I, section 9, of the Oregon Constitution).

Having found that petitioner's counsel incorrectly believed that petitioner lacked a protected privacy interest in the codefendant's car, the court turned to the question whether a motion to suppress would nonetheless have failed because the warrantless search of the codefendant's car came within an exception to the state warrant requirement. *See Trujillo v. Maas*, 312 Or 431, 435, 822 P2d 703 (1991) (inadequate assistance claims require proof that counsel's performance was both constitutionally inadequate and prejudicial).[4] In analyzing that question, both parties

---

[4] As we understand the post-conviction court's reasoning, it relied on the automobile exception to conclude that counsel's decision not to file a suppression motion did not prejudice petitioner; that is, even if counsel had filed a suppression motion, the motion would have failed because the automobile exception would have permitted the search. As the post-conviction court appears to have analyzed petitioner's inadequate assistance claim, it faced two "no prejudice" hurdles: First, would a suppression motion have failed, and second, even if it would have succeeded, would petitioner nonetheless have accepted the plea offer instead of going to trial? As discussed below, the post-conviction court did not reach the latter issue.

started from the proposition that the trial court's ruling in the codefendant's case was correct; that is, they agreed that the codefendant's consent to search her car was invalid and would not justify the officers' warrantless search of the car.

The superintendent argued, however, that the search was permissible under the Oregon automobile exception. Relying on older Oregon Court of Appeals cases, the superintendent argued that, after petitioner and the codefendant left the restaurant and approached her parked car, they were close enough to the car to come within the automobile exception. The superintendent reasoned that, because the automobile exception justified the officers' search of the car, counsel's decision not to file a suppression motion had not prejudiced petitioner. The post-conviction court agreed and denied petitioner's inadequate assistance claim.

On appeal, the superintendent argues that counsel's decision not to file a motion to suppress was reasonable. The superintendent contends that, after weighing multiple factors, petitioner's counsel made a reasonable tactical decision to forgo a suppression motion and to immediately begin negotiating a plea bargain. *Cf. Premo v. Moore*, 562 US 115, 126-27, 131 S Ct 733, 178 L Ed 2d 549 (2011) (discussing the considerations that can bear on the decision whether to file a suppression motion). One hurdle that the superintendent's argument faces is that the question why trial counsel decided against filing a suppression motion is, in the first instance, a factual issue for the post-conviction court. *See Pereida-Alba v. Coursey*, 356 Or 654, 673, 342 P3d 70 (2015).

On that issue, the post-conviction court found that "[t]rial counsel did not file a motion to suppress because he thought that petitioner did not have a protected privacy interest in the [codefendant's] car." After making that finding, the court pivoted immediately to whether a suppression motion would have failed under the automobile exception. Given the post-conviction court's finding that counsel's stated reason for not filing a suppression motion was wrong and its quick pivot to the automobile exception, we conclude that the post-conviction court did not find that petitioner's

trial counsel made the nuanced, alternative tactical decision that the superintendent attributes to him on appeal.[5]

      To be sure, the post-conviction court's finding that counsel decided against filing a suppression motion for one reason does not necessarily mean that counsel might not have had other, alternative reasons for not filing a suppression motion. However, that is not how we read the post-conviction court's findings. Rather, as the post-conviction court found, counsel's reason for not filing a suppression motion was based on a mistaken understanding of a long-established, core principle of Oregon constitutional search and seizure law. Given the post-conviction court's findings, we conclude that counsel's decision fell below the minimum level of assistance that the state and federal constitutions require. *See Montez v. Czerniak*, 355 Or 1, 6-8, 322 P3d 487 (2014) (describing state and federal standards for constitutionally adequate assistance).

      The remaining question is whether, even if counsel had moved to suppress the evidence found in the car, the motion would have failed because the search was permissible under the Oregon automobile exception. On that question, petitioner argues on appeal that the two older Court of Appeals automobile exception cases on which the post-conviction court relied require greater proximity between a defendant and a parked car than was present here. Alternatively, he contends that, even if those cases would have permitted the officers' search of the codefendant's parked car, a motion to suppress in petitioner's 2018 criminal case could have led to the Oregon Supreme Court's abolition of the automobile exception, a course that the court took three years later in *State v. McCarthy*, 369 Or 129, 501 P3d 478 (2021).

      Petitioner need not reach forward three years into the future to show that the automobile exception did not justify the search of the codefendant's car in 2018. Controlling precedent is closer to hand. In 2011, the Oregon Supreme Court reaffirmed that the automobile exception "does not

---

[5] Accordingly, we need not decide whether the record would have permitted the post-conviction court to infer that petitioner's counsel made such a tactical decision.

permit a warrantless search of a defendant's vehicle when the vehicle is parked, immobile, and unoccupied at the time that the police encounter it in connection with a crime." *State v. Kurokawa-Lasciak*, 351 Or 179, 181, 263 P3d 336 (2011). That was true even though the police officers were aware that the defendant in *Kurokawa-Lasciak* had engaged in money laundering at the Seven Feathers Casino and even though they encountered him and his car almost immediately after he parked it in the casino parking lot and began walking back toward the casino. *See id.* at 182 (noting that the defendant was approximately 30 feet from his parked car when the officers encountered him).

Six years later, in *State v. Andersen*, 361 Or 187, 390 P3d 992 (2017), the court sought to clarify the line that divided its Oregon automobile exception cases. The court reasoned:

> "[W]e reaffirm that the Oregon automobile exception applies if the automobile is mobile when the officers first encounter it in connection with the investigation of a crime. We also reaffirm that the exception does not apply if the car is parked, unoccupied, and immobile when officers encounter it."

*Id.* at 197. The court explained that, if a car is mobile when the officers first encounter it in connection with a crime, the fact that the car came to a momentary stop before the officers could effectuate a stop did not preclude the automobile exception from applying. *See id.* at 198. But, as the law stood when petitioner pled no contest, if the car was parked, unoccupied, and immobile when the officers first encountered it in connection with a crime, the automobile exception did not apply. *Kurokawa-Lasciak*, 351 Or at 193.

Both *Kurokawa-Lasciak* and *Andersen* had been decided when petitioner's counsel decided not to file a suppression motion in 2018. Both made clear that the automobile exception did not apply to the search of the codefendant's car because it was parked, unoccupied, and immobile when the police first encountered it in connection with their investigation of petitioner's attempt to cash a fraudulent check. *Kurokawa-Lasciak* and *Andersen* established that, as the law stood when petitioner pled no contest in 2018, the two

older Court of Appeals cases on which the superintendent relied in the post-conviction court did not justify the officers' search.[6] The superintendent does not argue that any other exception to the warrant requirement applied. We accordingly conclude that, if petitioner's trial counsel had filed a motion to suppress the evidence found in the codefendant's car, the motion would have succeeded. Counsel provided constitutionally inadequate assistance.

One other issue remains. Petitioner argues that his counsel's failure to file a suppression motion prejudiced him because "there is a reasonable possibility that, but for counsel's errors, he would not have pleaded [no contest] and would have insisted on going to trial." *See Hill v. Lockhart*, 474 US 52, 59, 106 S Ct 366, 88 L Ed 2d 203 (1985) (stating that prejudice standard in the context of a guilty plea); *Moen v. Peterson*, 312 Or 503, 513, 824 P2d 404 (1991) (following *Hill* as a matter of state law). As the prejudice standard was stated in *Hill* and *Moen*, the question whether counsel's deficient performance prejudiced petitioner turns on whether petitioner would have accepted the state's plea offer if his counsel had filed a successful motion to suppress. Specifically, would he have decided against pleading no contest to two counts of aggravated identity theft and have chosen instead to go to trial on the crimes charged in the amended indictment?

On that issue, petitioner's prejudice argument appears to have some merit. There appears to be little dispute that, if the evidence found in the car had been suppressed, the remaining evidence would have been insufficient to prove two counts of aggravated identity theft. Moreover, if petitioner had chosen to go to trial, there appears to be little dispute that the state could not have proved four counts

---

[6] At the hearing on the codefendant's suppression motion, the prosecutor asked one of the officers, "And your understanding of the search and seizure laws of the vehicle is that the vehicle was not mobile at the time [you encountered it]." The officer replied, "Well, not at the time, no." The prosecutor then clarified, "No, I mean, as in you couldn't do an automobile exception," to which the officer replied, "Right. Right." Petitioner does not argue that, as a matter of issue preclusion, the state's apparent conclusion in the codefendant's case that the automobile exception did not apply binds the superintendent in this post-conviction proceeding. As our discussion makes clear, however, we agree with the prosecutor and the officer's apparent conclusion.

of aggravated identity theft, leaving a risk of conviction on only the two remaining, more minor charges. There is, accordingly, a substantial basis for questioning whether petitioner would have decided to plead no contest to two counts of aggravated identity theft if his counsel had filed a motion to suppress. *Cf. Blain v. Cain*, 327 Or App 584, 588, 536 P3d 623 (2023) (holding that the petitioner had failed to introduce sufficient evidence to prove that, even if his counsel had filed a motion to suppress, he would have chosen to go to trial rather than plead guilty).

The post-conviction court, however, did not find whether petitioner had "established [a] reasonable probability that he would not have entered his plea but for his counsel's deficiency." *See Premo*, 562 US at 130. At a minimum, it is necessary to remand this case so that the post-conviction court can make that finding. We also note that, in the post-conviction proceeding, the superintendent submitted an affidavit from the deputy district attorney who prosecuted this case. In his affidavit, the deputy district attorney stated that, if the evidence in the codefendant's car had been suppressed, he would have sought a new indictment that charged petitioner with several individual counts of identity theft, and he would have asked the grand jury to add a charge for possession of a controlled substance. The deputy district attorney explained that, given such a restructured indictment, he would not have accepted a plea to anything less than 60 months.

The deputy district attorney's affidavit assumes that the question whether petitioner was prejudiced by his counsel's failure to file a suppression motion is not measured at the point in time that petitioner chose to take the state's plea offer but is measured at some future point in time and will depend on how later events could have unfolded if petitioner's counsel had successfully moved to suppress. On appeal, the superintendent's brief relies on the deputy district attorney's affidavit and appears to argue that the question whether petitioner was prejudiced by his counsel's inadequate performance turns on what the state might have done if a successful suppression motion had been filed. However, neither the superintendent nor petitioner explains

why we should or should not focus on how future events could have unfolded in deciding whether counsel's deficiency prejudiced petitioner. We leave that legal issue, as well as the factual question of what petitioner would have done if his counsel had filed a successful suppression motion, to the post-conviction court on remand.

Reversed and remanded.